LAMBERT PHARMACAL CO. v. BOLTON CHEMICAL CORPORATION.

(District Court, S. D. New York. January 11, 1915.)

1. TRADE-MARKS AND TRADE-NAMES ☞93 — ACTIONS FOR INFRINGEMENT — BURDEN OF PROOF.

While, in a suit for infringement of plaintiff's trade-name "Listerine," the burden was on plaintiff to show that confusion would result, this burden was met by showing that defendant adopted the arbitrary name "Listogen" for a compound similar to that of plaintiff, as in selecting an arbitrary name defendant should have selected a name about which there would be no question, and, having selected one bearing some resemblance to plaintiff's trade-name, any possible doubt of the likelihood of damage should be resolved in plaintiff's favor.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ☞93.]

2. TRADE-MARKS AND TRADE-NAMES ☞59 — INFRINGEMENT — DESCRIPTIVE WORDS—"LISTERISM"—"LISTERIAN"—"LISTERIZE."

The word "Listogen" was not descriptive by suggestion so as to be properly applied to a compound similar to that which plaintiff had been manufacturing and selling under the trade-name "Listerine," as "gen" would suggest that the compound had a principle of "list" in it, that it generated "list," or was its essential or active principle, and as the words "Listerism" "Listerian," and "Listerize" do not refer to a chemical com-

pound, but to a method of dressing wounds, the suggested meaning was senseless.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. &—59.]

3. TRADE-MARKS AND TRADE-NAMES &—85—INFRINGEMENTS—NAMES ENTITLED TO PROTECTION.

Where a chemical compound had been sold under the trade-name "Listerine" for 34 years and had become an article of very common use in many countries of which millions of bottles had been sold, an injunction against an infringement would not be denied, even though such name when first used was deceptive as indicating that a surgeon named Lister had something to do with the formula or had given it the sanction of his name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. &—85.]

4. TRADE-MARKS AND TRADE-NAMES &—3—INFRINGEMENTS—NAMES ENTITLED TO PROTECTION.

The name "Listerine" had not become descriptive or generic, so that the owner's right to the name had been lost, where it had always been associated with the article manufactured by such owner, and had not followed the goods elsewhere.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. &—3.]

In Equity. Suit by the Lambert Pharmacal Company against the Bolton Chemical Corporation. Decree for plaintiff.

John H. Drabelle, of St. Louis, Mo. (William A. Redding, of New York City, of counsel), for plaintiff.

LEARNED HAND, District Judge. [1] The defendant's compound is obviously appropriate for substitution for the plaintiff's; its uses are precisely the same, and it is made up for the same class of consumption. In choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question. In the case at bar there is at least ample doubt that this will be true. "Listogen," if the accent be on the first syllable, is like enough to "Listerine" to serve as an apt means of substitution among those who have not already enough familiarity with the plaintiff's article as to be safe from any such efforts. There is always a fringe of possible customers, next year's for instance, with whom such opportunities are not to be disregarded, people who have heard vaguely the old name or seen it in advertisements and who fail to carry it with accuracy in their memory. Among these confusion is eminently possible, and that possibility, if not a remote speculation, is quite enough. To show how near the defendant's name is, we need only

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

change one letter, "g" to "r"; "Listoren" would be so close an imitation as would not allow argument in its defense. Now the "g" does make a difference; being a consonant it sounds more distinctly, but I cannot say that it is enough, and no reasonable explanation, no explanation whatever, is suggested why the name need be used.

[2] In saying this I do not forget that the defendant claims the use of the English words "Listerism," "Listerian" and "Listerize," all of which had some currency in English before 1881. But the defendant does not use these words; at best "Listogen" is a coined word with a penumbra of suggestion. The result of a decree will not be to prevent them from using any word in the English language, including all which are derived from the name of Lord Lister. Besides, what does "Listogen" suggest, if mere suggestion be enough to justify such a use of a coined word? "Gen" suggests that the compound has a principle of "List" in it, that it generates "List," or is its essential or active principle. Now there is no such thing as "List," nor as "Lister" nor "Listerism." The words which have gone into use mean the methods first introduced by Lord Lister, a way of treating wounds to prevent suppuration. There is no sense in a word which suggests that it contains the active principle of "Listerism" or that it can generate "Listerism." If Lord Lister had discovered a substance which went by his name and which could be created by a chemical compound, and if the defendant had invented such a compound, there would be some color for the contention that they had made up a word which was descriptive at least by suggestion, but "Listogen" means, and is capable of meaning, nothing whatever. There is indeed one meaning which it conceivably can carry and that is that it contains the essential principle of "Listerine"; that it generates the active element of the plaintiff's product, but that implication the defendant will scarcely wish to make.

[3] Finally, the defendant takes the position that "Listerine" is a deceptive name itself, and suggests that the compound was derived from Lord Lister, an error that has crept even into the Century Dictionary. I think that there was some basis for this contention when the name originated. I am sure I should have thought it was named after Lord Lister, as it was, and I should have vaguely supposed that he had something to do with the formula, or had at least given it the sanction of his name. Yet I am not disposed at the end of 34 years to say that it carries any longer any such implication. The record shows that the sales for now many years have been of many millions of bottles, and that it has become an article of very common use in many countries. We should rather assume that the name has become identified with the thing and has long since lost its connotation of Lord Lister's association. We need not go back for so long to find in the origin of the word a suggestion not altogether truthful, but long since cured by time. Of course, no court will protect a man in the perpetration of a deception; but, where the trade-name has ceased to be deceptive, it is pharisaical to visit the sins of one generation upon the next in the aid of those who now seek to trade upon the efforts of the present. I

shall not therefore decide how far the suggestion of "Listerine" is so deceptive as to have forbid any protection in 1881.

[4] This question does, however, bring up the further question whether the name "Listerine" itself has become descriptive or generic. This is answered by Jacobs v. Beecham, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729, a case weaker than this, because the plaintiff, not having disclosed his formula, could not show, as here, that it was different from the defendant's. That case holds that, where the name has always been associated with the plaintiff's manufacture and has not followed the goods elsewhere, it can never become generic in the sense that the right to the name disappears.

A discussion of the many cases in which similarities have, or have not, been thought infringements, serves no end; applications of the accepted principle no doubt vary, but no two cases are alike. One must trust one's own sense of the likelihood of confusion and the absence of any justification for the defendant's choice of name.

The usual decree will pass with a reference, if the plaintiff wishes.