SALANT & SALANT, Inc., v. FELDMAN & WEINMAN.

Court of Appeals of District of Columbia.

Submitted January 11, 1928. Decided February 6, 1928.

No. 2010.

**1. Trade-marks and trade-names and unfair competition ⬤⇒45½—"Sammy" held so similar to "Uncle Sam," applied to competitor's work shirts, as to require cancellation of registration.**

Name "Sammy," registered as trade-mark for work shirts, *held* so similar to name "Uncle Sam," already applied to work shirts widely sold by competitor for over 22 years, as to require cancellation of registration.

**2. Trade-marks and trade-names and unfair competition ⬤⇒45½—Reasonable doubt as to likely confusion between trade-marks should be resolved in favor of prior user, in cancellation proceeding.**

Reasonable doubt as to whether confusion between trade-marks of parties to proceeding for cancellation of registration is likely to occur should be resolved in favor of prior user.

Appeal from the Commissioner of Patents.

Petition by Salant & Salant, Inc., for cancellation of a trade-mark registration granted on the application of Feldman & Weinman. From a decision of the Commissioner of Patents overruling the petition, petitioner appeals. Reversed and remanded.

G. M. Dowe, of New York City, for appellant.

E. I. Feldman, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. This is an appeal from a decision of the Commissioner of Patents, overruling a petition for the cancellation of a trade-mark registration.

It appears that about January 1, 1900, Salant & Salant, appellant's predecessor, adopted and used a trade-mark consisting of a conventional figure of "Uncle Sam," followed by the words "Uncle Sam," for use upon work shirts and negligée shirts, and that appellant and its predecessor have continuously used the mark ever since. On January 7, 1911, they caused the trade-mark as applied to such shirts to be duly registered in the Patent Office.

On January 7, 1922, Feldman & Weinman, appellees herein, filed an application for the registration of the word "Sammy," as a trade-mark for work shirts, alleging use of the mark since December, 1921. On September 19, 1922, the trade-mark was registered upon their application.

The appellant has filed a petition for the cancellation of this registration. The petition was sustained by the Examiner of Interferences, but his decision was reversed by the Commissioner of Patents.

It is not disputed that the goods to which the respective marks are applied are identical; the only question in the case being whether the trade-marks are deceptively or confusingly similar. Testimony has been taken by both parties upon that issue.

[1] It appears that the trade-mark of Salant & Salant, Inc., has been applied to work shirts since 1899, and such shirts have had a wide sale in practically every state of the United States and in foreign countries; they were used extensively during the war by the government for our troops in the war zone; that the sale of the shirts has increased from about 4,000 dozen per month up to 40,000 to 50,000 dozen per month at the present time; and that the work shirt and the trade-mark have been extensively advertised at considerable expense.

The work shirts in question are sold largely to unlettered persons, and the possibility of confusion is greater than when the purchasers are more observant. Moreover, it is likely that some time will intervene between sales made to the same purchaser, with the result that the purchaser's recollection of the exact mark may not be distinct. The name "Uncle Sam" and "Sammy" bear a certain resemblance to each other, and it is not unlikely that customers may mistake the one mark for the other, when applied to exactly the same kind of articles. It may be assumed that, when Feldman & Weinman adopted the word "Sammy" as their mark for work shirts, they were well informed of the good will which Salant & Salant, Inc., had secured for their goods under the mark "Uncle Sam," and the suspicion is unavoidable that they were seeking to benefit from it by means of the resemblance between the two marks.

[2] The Examiner of Interferences, when deciding the case for the appellant, said: "The determination of this case has not been without difficulty, but where there is a rea-

sonable doubt whether confusion between the marks of the respective parties is likely to occur, it is a well-established rule that such doubt should be resolved in favor of the prior user." The Commissioner of Patents, when reversing the decision of the Examiner, said: "While, as stated by the Examiner of Interferences, the determination of this case is not without difficulty, and while the rule of resolving reasonable doubt against the newcomer should be allowed, yet I am unable to reach the conclusion that there is probable confusion of goods or of origin, if the two marks are used by their respective owners in the same market."

We think that the doubt expressed by the Examiner, and in a measure recognized by the Commissioner, leads to the conclusion that the second mark is not entitled to registration, and that the appellant's petition for its cancellation should be granted.

In Wm. Waltke & Co. v. Geo. H. Schafer & Co. (49 App. D. C. 254) 263 F. 650, this court held that the trade-mark "U-Lavo" was confusingly similar to "Lava," as applied to soap. In the court's opinion it is said:

"The reason for this is, as has been said by this court more than once, that the field from which a person may select a trade-mark is practically unlimited, and hence there is no excuse for his impinging upon, or even closely approaching the mark of his business rival. * * * Where he does so, he is open to the suspicion that his purpose is to appropriate to himself some of the good will of his competitor."

In Guggenheim v. Cantrell & Cochrane, Ltd. (App. D. C.) 10 F.(2d) 895, it was held that the trade-marks "G & G" and "C & C," as applied to ginger ale, were confusingly similar. The court said:

"In this court, it has been repeatedly declared that there is neither legal nor moral excuse for even an approximate simulation of a well-known mark applied to goods of the same descriptive properties, and that, when an attempt to effect such simulation becomes apparent, the two marks should not be examined with a microscope to detect minute differences, but, on the contrary, should be viewed as a whole, as the general public would view them; in other words, that the points of similarity are of greater importance than the points of difference."

We are of the opinion, accordingly, that the decision of the Commissioner of Patents, reversing the decision of the Examiner of Interferences, is erroneous; it is therefore reversed, and the cause is remanded.