KNOX HAT COMPANY, INC., Plaintiff, *v.* SELF-SERVICE MILLINERY STORES, INC., Defendant.*

Supreme Court, New York County, February 27, 1930.

*Briesen & Schrenk* [*Thomas McErlean* of counsel], for the plaintiff.

*Kommel & Zucker* [*Louis Zucker* of counsel], for the defendant.

McCOOK, J. The plaintiff and the defendant are respectively dealers in women's hats, among other things. The plaintiff is a manufacturer also and has been in the business of manufacturing women's hats for many years, nearly thirty, with a very high reputation for quality, material and workmanship. The plaintiff is entitled to the exclusive use of a shield or crest bearing the word "THENOX." I take the evidence to be that this word "THENOX" is not in use at the present time and was not in use by the plaintiff at the time of the beginning of this action, although the expression "The Knox" as applied to hats seems to be in common oral use. The plaintiff has the exclusive right to another trade-mark, bearing the word "KNOX" in bold capitals

---

* See, also, 138 Misc. 426.

It uses the second trade-mark exclusively, and sells women's hats of good quality and workmanship at from five dollars up, bearing house marks with a shield or crest, and some of the labels bearing the words " KNOX-FIFTH AVENUE, NEW YORK." I think the testimony was that about half of the women's hats had that particular wording.

The defendant sells, at a lower price, the highest being four dollars, and on a much smaller scale, hats of an inferior quality and workmanship bearing the word " ZINOX," sometimes " ZINOX-FIFTH AVENUE," in capital letters, in some respects similar to those of plaintiff's house marks, and in some respects different. It is not contended that in and by itself the shield or crest employed by the defendant is sufficiently like plaintiff's to constitute an infringement. A similar question has arisen with respect to stockings, which plaintiff and defendant also sell, as well as other articles of men's and women's apparel.

The defendant operated eight stores in Manhattan, Kings and Queens, one of them being on Fifth avenue, Manhattan. The defendant freely used the words " ZINOX " and " ZINOX-FIFTH AVENUE " not only on the hats and stockings, as I have said, but in window signs and other signs and advertisements, including a dodger advertisement in evidence; also on bags and boxes in which to pack the hats, although it is not claimed that the arrangement of the shield and other lettering on the bags and boxes is the same as plaintiff's.

The defendant corporation was formed in 1925. Until 1928, however, the defendant did not use the word " ZINOX " as a trade name in the hat linings, though he said he did in certain other respects, during that period between 1925 and 1928. During all this time, that is, from 1925 on, Mr. Zinox was in control, as he puts it, of the business or trade affairs of the corporation, and was a stockholder in a substantial amount. Before 1925 he said he never used the work " ZINOX " at all in connection with these goods. His version of how he came to use his own name in the manner which plaintiff now objects to is that he found that the system of self-service, employed in the business of the defendant's corporation, was no longer successful on account of competition, because others used a similar system, and thereupon he took his own name, his last name be it observed and not the full name, and his testimony is that he did not know that the plaintiff sold women's hats until this action was begun, and that he had no intention of imitating its trade-mark or house mark, whether it be considered a registered trade-mark or a trade-mark at common law.

While the plaintiff's rights do not depend upon evidence of a

fraudulent intention on defendant's part, it is seen that under the circumstances Mr. Zinox's motives in doing what he did are not free from doubt. It is not necessary for the plaintiff to show that retail customers have actually been deceived. The question is whether the labels, marks and so on are calculated to mislead. There is evidence on the part of the plaintiff, in the case as a whole, from which I infer that it was calculated to mislead, both by leading retail customers to believe that it was the plaintiff's product and so procuring sales for the defendant, and by causing customers to believe that the plaintiff was manufacturing and selling goods of an inferior quality, and so inducing them to buy hats and other articles from plaintiff's competitors instead of from the plaintiff.

It would seem from the testimony, and I refer now to the defendant's testimony as well as to that of the plaintiff, that it is not the usual practice for a customer of a retail store to examine the marks in the hats and other articles with great care and in great detail. It is to be assumed that such a customer never has the opportunity of examining the defendant's and the plaintiff's product or marks in comparison with one another. These are also matters of common sense.

Coming now to the comparison of the two names, merely the names. I have referred to the use of " KNOX " and " ZINOX." In the case of *Bregstone* v. *Greenberg* (192 App. Div. 213), Mr. Justice GREENBAUM, writing for the court, commented on the similarity of names — one was the " AERO " brand and the other was the " HERO " brand — and spoke of the similarity in sound between the two words.

It must have been observed all through the conduct of this trial that even the counsel were sometimes confused as to whether somebody was saying " THE KNOX " or " ZINOX," as applied to hats. Some of the witnesses and one of the counsel pronounced it Zinox, the other counsel pronounced it Zeenox, and I think some of the witnesses did. At all events, some people use the broad pronunciation " the " for the word " the " and sometimes they employ the short " e."

The authorities governing this case are collected in two editorial articles in the New York Law Journal issues of October 28, 1924, and January 21, 1929. It is not a question here whether customers were deceived, in fact whether anybody was deceived, but whether the use of " ZINOX," as it has been used, was calculated to mislead. I believe it was. Plaintiff will have judgment.

As far as the form of the injunction is concerned, there is some difference between the testimony received and the evidence contained in the affidavits which were submitted in connection with

the matter passed on by this court in Special Term, Part I (138 Misc. 426), and by the Appellate Division on appeal (227 App. Div. 716, 721). The court is, therefore, ready to consider further whether these differences are such as could require a difference in the extent of the injunction, or whether there are other circumstances that require a different form of injunction; therefore, submit findings with proposed form of injunction and so on. The form of injunction will be considered later.