# INDUSTRIAL RAYON CORPORATION v. DUTCHESS UNDERWEAR COR-PORATION.

District Court, S. D. New York.

Jan. 21, 1937.

Sullivan & Cromwell, of New York City, and Tolles, Hogsett & Ginn, of Cleveland, Ohio (Inzer B. Wyatt, of New York City, Louis S. Peirce, of Cleveland, Ohio, and David W. Peck and Franklin B. Lincoln, Jr., both of New York City, of counsel), for plaintiff.

Herbert Kaufman, of New York City (Asher Blum and Hugo Mock, both of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

I dismiss the complaint herein on the merits but without costs.

I. This is a cause in equity between two Delaware corporations involving the alleged infringement by the defendant of the plaintiff's trade-mark Spun-lo registered under the United States Trade-Mark Law —whence flows the subject matter jurisdiction of this court, title 15 United States Code § 81 et seq. (15 U.S.C.A. §§ 81 et seq.)—and a claim, based on the same facts, of unfair competition by the defendant with the plaintiff. The plaintiff asks for an injunction, but not for any accounting.

II. Although there is not diversity of citizenship in this cause, in view of the fact that there is a substantial federal question involved in the trade-mark claim herein, under the teachings of Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L. Ed. 1148, and L. E. Waterman Co. v. Gordon, 72 F.(2d) 272, 274 (C.C.A.2), affirming (D.C.) 8 F.Supp. 351, 352, 353, I have jurisdictional competence to deal with the claim of unfair competition on its merits and give what I may regard as appropriate relief in respect thereof.

III. The goods involved in this cause are undergarments for women. I find that they are not far apart in price range, and therefore appeal to substantially the same class of purchasers.

It is common ground that these undergarments are similar in texture and appearance, whether made by the plaintiff's customers of the plaintiff's fabric, or by the defendant of its own fabric, and that they reach the retail trade through the same channels.

It is also common ground that on each undergarment there is what was referred to on the trial as a "hanger label"—of a type long used on flimsy knitted garments. This hanger label is a small loop made of tape, by which, if desired, the garment may be hung up on a hook without running the risk of damaging its fabric, either by piercing it or by stretching it unduly at the point of contact with the hook.

Therefore the goods involved in this cause are by their nature and, due to the prices at which they are sold, necessarily in active competition with each other. The relation of the parties to their competing goods are, however, somewhat different.

IV. Since September, 1931, plaintiff has been manufacturing circular knit rayon fabric, spending much money in many kinds of advertising thereof, and selling it, under the trade-mark Spun-lo, to customers who are makers of undergarments for women.

The hanger labels attached by the plaintiff's customers to their garments usually have woven into them the customer's own mark as garment manufacturer, together with the plaintiff's Spun-lo mark as showing the origin of the fabric used. The plaintiff pays one-half of the cost of this label.

The defendant now makes, and for many years has made undergarments for women out of circular knit rayon fabric which it knits out of rayon yarn purchased from a manufacturer thereof. Its Sunglo mark is woven into the hanger labels of its garments.

The plaintiff began to use the name Spun-lo as a trade-mark on circular knit rayon fabric in September, 1931, and registered that name, under the Trade-Mark Act of the United States, as a trade-mark for rayon fabric, on June 6, 1933.

The defendant began using the name Sunglo as a trade-mark on ladies'. undergarments made of circular knit rayon fabric in February, 1934, about two years and five months after the plaintiff had adopted the name Spun-lo as its trade-mark, and with the knowledge that the plaintiff had been using it on the same kind of rayon fabric in the manner above described.

On June 17, 1934, the defendant registered Sunglo in the Patent Office as a trade-mark for ladies' rayon underwear.

V. It was not until August 29, 1935, almost four years after the plaintiff had adopted the name Spun-lo for its knit rayon fabric, that one of its employees observed in a trade paper called "Womens Wear Daily" an advertisement by the defendant

of underwear for women made of knit rayon fabric called Sunglo.

On September 9, 1935, a written demand was made by the plaintiff on the defendant to cease and desist from its use of the name Sunglo on the ground that it was an infringement of the plaintiff's trade-mark Spun-lo. Responding, the defendant refused the plaintiff's demand and advised the plaintiff that the name Sunglo had been registered as a trade-mark with the United States Patent Office on July 17, 1934, as Trade-mark No. 315,113, and that it would continue to use the name Sunglo on its merchandise.

On October 5, 1935, plaintiff filed a petition with the Patent Office to cancel the registration of Sunglo by the defendant. That petition is now pending undetermined.

On December 17, 1935, plaintiff filed its bill of complaint in this action.

It is clear, therefore, that the plaintiff acted promptly in its attempt to protect its rights.

VI. For the reasons hereinafter stated, I find that the defendant has not been guilty of any act of unfair competition with the plaintiff unless the use of the word Sunglo can be so stigmatized.

The controversy of this cause, therefore, in both its aspects—infringement of trade-mark and unfair competition—is between the plaintiff's mark Spun-lo and the defendant's mark Sunglo.

VII. If Sunglo is not in sound and appearance sufficiently similar to Spun-lo to be an expectable cause of potential confusion between them in the trade wherein they are used, the complaint must, of course, be dismissed, and, if I felt I could so find, that would be an easy method of disposing of this cause. But, when I compare the word Sunglo with the word Spun-lo, it seems to me to be clear that there are similarities between them which undoubtedly do make confusion in such trade expectable.

The two words have the same number of letters and the same number of syllables, and of the six letters in each word five are identic; in the case of each word the accent is on the first syllable; and, perhaps, the most important of all their similarities is that the vowel sounds in each word are exactly the same and come in exactly the same sequence. It may, I think, be fairly said that the two words are not unlike to the eye or the ear.[1]

It is not necessary to show instances of actual confusion in the trade to establish the plaintiff's right to relief in a cause of this kind, for potentiality of confusion is sufficient in causes of unfair competition, Notaseme Hosiery Co. v. Straus, 201 F. 99, 100 (C.C.A.2), affirmed in this respect 240 U.S. 179, 180, 183, 36 S.Ct. 288, 60 L.Ed. 590; Helmet Co. v. Wm. Wrigley, Jr., Co., 245 F. 824, 829, 830 (C.C.A.6) as well as in causes of trade-mark infringement, Gehl v. Hebe Co., 276 F. 271, 272, 273 (C.C.A.7); Lambert Pharmacal Co. v. Bolton Chemical Corp. (D.C.) 219 F. 325, 326; Taendsticksfabriks A. Vulcan v. Myers, 139 N.Y. 364, 367, 368, 34 N.E. 904.

But it is always comforting for the judge, when questions involving the nuances of words used as trade-marks arise, to

---

[1] Instances of words which had been held to be confusingly similar when used on goods of the same descriptive quality are: "Uncle Sam" and "Sammy," Salant & Salant v. Feldman & Weinman, 58 App. D.C. 11, 24 F.(2d) 276; "Cutex" and "Cuticlean," Northam Warren Corporation v. Universal Cosmetic Company (C. C.A.) 18 F.(2d) 774; "Hebe" and "Mege," Gehl v. Hebe Company (C.C.A.) 276 F. 271; "Knox" and "Zinox," Knox Hat Company, Inc., v. Self-Service Stores, Inc., 138 Misc. 124, 245 N.Y.S. 14; "Celanese" and "Silkanese," Celanese Corporation v. Vanity Fair Mills (Cust. & Pat.App.) 47 F.(2d) 373; "Vulcan" and "Vulture," Taendsticksfabriks A. Vulcan v. Myers, 139 N.Y. 364, 34 N.E. 904; "Listerine" and "Listogen," Lambert Pharmacal Co. v. Bolton Chemical Corporation (D.C.) 219 F. 325; "Sapolio" and "Sapho," Enoch Morgan's Sons Co. v. Whittier-Coburn Co. (C.C.) 118 F. 657; "Beats-All" and "Knoxall," American Lead Pencil Co. v. L. Gottlieb & Sons (C.C.) 181 F. 178; "Certosa" and "Ceresota," Northwestern Consolidated Milling Co. v. William Callam & Son (C.C.) 177 F. 786; "Chipso" and "Chase-O," Proctor & Gamble Co. v. J. L. Prescott Co. (Cust. & Pat.App.) 77 F.(2d) 98; "Kotex" and "Rotex," Rotex Surgical Appliance Co. v. Kotex Co. (Cust.&Pat. App.) 44 F.(2d) 879; "Simoniz" and "Permanize," Simoniz Co. v. Permanizing Stations (Cust.&Pat.App.) 49 F.(2d) 846; "Cottolene" and "Cottoleo," Fairbank Co. v. Central Lard Co. (C.C.) 64 F. 133; "Uneeda" and "Iwanta," National Biscuit Co. v. Baker (C.C.) 95 F. 135; "Ripplette" and "Ripleene," Haas Bros. Fabrics Corp. v. Bliss, Fabyan & Co., 57 App.D.C. 44, 16 F.(2d) 540.

have his impressions confirmed, and I find such comfort in this record. For, whilst the instances of actual confusion shown are not very numerous, there is enough evidence to justify empirically the views which I have expressed above as to the expectable confusion between the words Spun-lo and Sunglo when used on goods of the same descriptive quality.

The George B. Peck Company, a department store in Kansas City, advertised women's undergarments of " 'Spanlo' Rayon." Upon the plaintiff making inquiry by letter as to the use of the word "Spanlo" and whether it was intended to be Spun-lo, the Peck Company apologized for the spelling, saying it was a typographical error which had been corrected by them in the proof of the advertisement but had not been corrected in the newspaper office. Later, on the same day, the Peck Company wrote again to the plaintiff, stating that the articles which they were advertising were made of Sunglo rayon, adding, "We are indeed sorry for the confusion and error, be assured it was unintentional and will not occur again." This was an instance of complete confusion by the advertising manager of a large department store which led to his advertising defendant's garments under the plaintiff's trade-mark.

The plaintiff's advertising department, in order to feel out the situation, sent a questionnaire around to various retail stores. The advertising manager of Loeb & Hene Company, a department store in Lafayette, Ind., when asked what manufacturer sold them Spun-lo rayon fabric, answered, "The Dutchess Manufacturing Company," and returned this answer on a business reply post card to the plaintiff's advertising manager.

Paul Selver, president of the defendant corporation, testified that a garment made out of Spun-lo rayon "was returned by mistake to his office," allegedly on account of bad workmanship in its manufacture. The attempt of defendant's counsel to correct this on redirect examination failed, and the record as to the mistake is quite clear.

Miss Ferrar, employed by A. B. Sircom Company, Inc., New York City, manufacturers of women's undergarments, testified that she had known of instances where buyers had questioned whether Sunglo and Spun-lo were the same thing. Indeed, the defendant's witness, Miss Bryce, employed in the underwear department of Hahne's Department Store in Newark, N. J., said of women purchasers at that store that "they never usually get the right name, but they get there somehow or other."

Defendant's mark is, it seems to me, so nearly similar to the plaintiff's mark, in sound, if not in appearance, that it would very probably lead a retail buyer to confuse the marks—not, to be sure, when they are seen side by side by such a buyer, but when one mark only is seen and the other mark is recalled through the perspective of the buyer's memory, which is usually foggy about such details, whether the original impression on his mind was auditory or visual.

The defendant has not suggested any reason why it should have adopted a mark so close in sound and appearance to the plaintiff's.

The defendant knew of the plaintiff's use of the word Spun-lo before it began to use Sunglo, but, disregarding the legion of actual words from which it might have made its choice of a mark, and the possibility of devising endless other fanciful words as its mark, the defendant chose a word which came far too near to the plaintiff's mark.

The implication is, I think, almost inescapable that the defendant attempted to imitate Spun-lo with the hope of not running the risk of being held guilty of infringing it, and I so find.

As Judge Learned Hand said in a trademark case, Lambert Pharmacal Co. v. Bolton Chemical Co. (D.C.) 219 F. 325, at page 326: "In choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field."

And at page 328 of 219 F.: "A discussion of the many cases in which similarities have, or have not, been thought infringements, serves no end; applications of the accepted principle no doubt vary, but no two cases are alike. One must trust one's own sense of the likelihood of confusion and the absence of any justification for the defendant's choice of name."

It is not permissible to use the same mark for the same product or the same mark for a similar product or a similar mark for the same product. It is under the third category that the defendant finds itself. It has used for the same product a mark that is confusingly similar to the plaintiff's mark.

Unfair competition on the part of the defendant is the wrong against which equity seeks to guard the plaintiff in causes of this kind, whether or not a trade-mark be involved. Hanover Milling Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713.

The circumstances of this cause seem to me to raise in limine a presumption of unfair competition.

The question with which I now have to deal is whether the nature of that unfair competition is such as to give the plaintiff a right to secure an injunction.

VIII. It seems to me perfectly clear that the only basis for a claim of unfair competition which the plaintiff could properly make herein is that the defendant used the mark Sunglo, which is confusingly similar to the mark Spun-lo used by the plaintiff. Indeed, I understand that is the only act of unfair competition which the plaintiff seriously urges.

I find that there has not been any other act of unfair competition by the defendant.

The use of the hanger labels by the defendant cannot be considered ipso facto as an instance of unfair competition—although, as one of the plaintiff's exhibits shows, they may be sewn flat thereon—for such hanger labels serve a useful purpose on garments made of such flimsy material as those in question here and are common to the trade. Cf. Schlitz Brewing Company v. Houston Ice Company, 250 U.S. 28, 39, 39 S.Ct. 401, 63 L.Ed. 822; Coats v. Merrick Thread Company, 149 U.S. 562, 573, 13 S.Ct. 966, 37 L.Ed. 847; Nims on Unfair Competition, § 121, and cases there cited.

There is not any attempt on the defendant's part to imitate the color of the plaintiff's labels.

On the hanger labels of the garments made of the plaintiff's fabric, there is woven into the tape the plaintiff's mark Spun-lo, usually with the addition of the mark of the manufacturer of the garment. The hanger labels on the garments made of the plaintiff's fabric, which are exhibited here, have the names woven therein—in different colors, one is light blue, one is dark blue, and one is brown.

There is woven in gold into the tape, out of which the defendant's hanger labels are made, the defendant's mark Sunglo, with rays spreading in all directions from the top of that word, and underneath it the words "By Dutchess."

I find that the defendant's advertisements have always explained that its fabric was made of Du Pont yarn and that there has not been any attempt by the defendant to mislead the trade or to try to palm off its undergarments made of Sunglo as having been made out of the plaintiff's fabric Spun-lo.

It is clear, therefore, that the plaintiff's right to an injunction herein must depend on its right to the word Spun-lo as a trademark.

IX. The Patent Office history of the words Sunglo and Spun-lo is as follows:

On July 25, 1922, in pursuance of an application filed February 16, 1921, the Brainerd & Armstrong Company secured registration, as trade-mark No. 157,011, of the trade-mark Sunglo which had been used since February 3, 1921, for artificial silk threads in Patent Office class 43, covering "Thread and Yarn."

On December 30, 1924, in pursuance of an application filed August 11, 1924, the Smith, McCord & Townsend Drygoods Company secured registration, as trade-mark No. 193,444, of the trade-mark Sunglow Satin, which had been used since December 1923, for mercerized sateen for linings and underwear in Patent Office Class 42, covering "Knitted, Netted and Textile Fabrics."

On May 12, 1931, in pursuance of an application filed January 19, 1931, the plaintiff, Industrial Rayon Corporation, secured registration, as trade-mark No. 283,005, of the trade-mark Spun-lo, which had been used by the plaintiff since December 31, 1930, for rayon yarn for use by manufacturers to produce rayon fabric or rayon articles of wearing apparel in Patent Office class 43, covering "Thread and Yarn."

On June 6, 1933, in pursuance of an application filed May 6, 1932, the plaintiff, Industrial Rayon Corporation, secured registration, as trade-mark No. 303,713, of the trade-mark Spun-lo, which had been used by the plaintiff since September 15, 1931, and which is claimed herein to have been

infringed by the defendant, for rayon fabric in the piece in Patent Office class 42, covering "Knitted, Netted and Textile Fabrics."

On July 17, 1934, in pursuance of an application filed March 23, 1934, the defendant, Dutchess Underwear Corporation, secured registration, as trade-mark No. 315,113, of the trade-mark Sunglo, which it had used since February 9, 1934, for ladies' rayon underwear, in Patent Office Class 39, covering "Clothing."

Thus in Patent Office class 43, covering "Thread and Yarn," Spun-lo was preceded by Sunglo, and in Patent Office class 42, covering "Knitted, Netted and Textile Fabrics," Spun-lo was preceded by Sunglow Satin. But Patent Office categories are not binding on me, cf. L. E. Waterman Company v. Gordon, 72 F.(2d) 272, 273 (C.C.A.2), and I find that all the trademarks just enumerated were granted for goods of like descriptive qualities, and are therefore in potential conflict in view of the similarity in sound and appearance which I have found to exist between them.

I have no hesitation whatever in holding that, certainly for a fabric and probably for a thread, the word Spun-lo is a fanciful word which could properly be used as a trade-mark unless it, or a similar word, had been previously appropriated by some one else for goods of the same descriptive quality.

But the plaintiff's difficulty is that it cannot have it both ways. If, as I hold to be the fact, the defendant's trade-mark Sunglo would infringe the plaintiff's Spun-lo if that were valid, by the same token the mark Spun-lo—though a proper kind of a word for a trade-mark—should not have been registered by the Patent Office, owing to the earlier registration in class 43 of the trade-mark Sunglo to Brainerd & Armstrong for artificial silk threads, and in class 42 of the trademark Sunglow Satin, to Smith, McCord & Townsend Drygoods Company for mercerized sateen for linings and underwear. Williams Evangeline Confection Co. v. U. R. S. Candy Stores, Inc., 54 App.D.C. 68, 294 F. 999.

Owing, therefore, to the prior appropriation and earlier use of conflicting marks for goods of the same descriptive quality, the plaintiff cannot maintain his mark Spun-lo as a valid trade-mark. Ubeda v. Zialcita, 226 U.S. 452, 455, 33 S.Ct. 165, 57 L.Ed. 296; Columbia Mill Company v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.

Ed. 1144; O'Rourke v. Central City Soap Company (C.C.) 26 F. 576.

X. Thus this cause comes directly within the principle laid down in the case of Standard Paint Company v. Trinidad Asphalt Manufacturing Company, 220 U.S. 446, at page 461, 31 S.Ct. 456, 460, 55 L. Ed. 536, wherein, after holding that the plaintiff's trade-mark Ruberoid was invalid in that case because it was a descriptive word and hence not a good trade-mark, the Supreme Court, in dealing with the unfair competition aspect of the case, said: "The only imitation by the asphalt company of the roofing of the paint company is that which exists in the use of the word 'Rubbero,' and this only by its asserted resemblance to the word 'Ruberoid.' To preclude its use because of such resemblance would be to give the word 'Ruberoid' the full effect of a trademark, while denying its validity as such. It is true that the manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealing, whether there be a technical trademark or not; but the essence of such a wrong consists in the sale of the goods of one manufacturer or vendor· for those of another. * * * Such a wrong is not established against the asphalt company. It does not use the word 'Rubbero' in such a way as to amount to a fraud on the public."

Thus the Supreme Court in that case found that the Asphalt Company had not been guilty of any act which could possibly be construed as unfair competition other than the use of the confusing name which the inherent infirmity of the plaintiff's case precluded it from preventing.

A sequel to this decision of the Supreme Court somewhat graphically points the moral, for later, the Standard Paint Company in another cause was granted equitable relief when the unfair competition of which it complained was not wholly an infringement of its invalid trade-mark.

After the Supreme Court had handed down its decision in the case from which I have just quoted, a corporation called the Rubberoid Roofing Company was formed under the laws of the state of Illinois, apparently for the purpose of profiting by the result of that decision, for it began dealing in exactly the same kind of roofing material as the Standard Paint Company manufactured and in selling it under the trade-name "ruberoid," and in so doing it also used methods of unfair competition tending to cause the public to think its

product was the same as that of the Standard Paint Company.

The Standard Paint Company brought suit against the Rubberoid Roofing Company in the United States District Court for the Northern District of Illinois, asking an injunction on the basis of the defendant's unfair competition. The District Court dismissed the complaint. The opinion of the District Court does not seem to be reported, but an appeal was taken from its decision to the Circuit Court of Appeals for the Seventh Circuit. In a very interesting opinion by Judge Mack, it was held that the Rubberoid Roofing Company, instead of using "ruberoid" as a descriptive name only in accordance with the decision of the Supreme Court, was not only using it as a trade-name but also was guilty of acts of unfair competition with the Standard Paint Company. Consequently, the decision of the District Court was reversed and an injunction granted to the Standard Paint Company restraining the Rubberoid Roofing Company from using the word "ruberoid" except as a descriptive word, and hence providing that it should not be used in its corporate name. Standard Paint Company v. Rubberoid Roofing Company (C.C.A.) 224 F. 695, 698.

Here I have found that the defendant has not been guilty of any act of unfair competition with the plaintiff outside of or beyond its use as its trade-mark of the word Sunglo. The plaintiff's sole basis, therefore, for claiming an injunction against the defendant on the ground of unfair competition, is frustrated owing to the invalidity of the plaintiff's trade-mark. This is, therefore, an instance—not common in equity—of damnum absque injuria.

XI. Summarizing the situation herein and using an analogy from patent law:

In the Standard Paint Company case the plaintiff's trade-mark was held invalid by the Supreme Court for lack of invention—because it was merely a descriptive word.

In the instant cause, I hold the plaintiff's trade-mark invalid owing to anticipation—prior adoption and use by others of a confusingly similar word for goods of the same descriptive qualities.

In neither cause was there any unfair competition except the use of a word which would have infringed the trade-mark claimed by the plaintiff if that had been valid.

Therefore, to give the plaintiff an injunction in this cause on the ground of unfair competition would be, in effect, validating its trade-mark which I have held invalid.

Thus to blow hot and cold because the trade morals of a situation offend him is a temptation to which a judge must not yield. For in these causes involving the alleged invasion of trade rights injunctions are granted only because the plaintiff has made out a case which will justify such a drastic remedy, not because the defendant's actions would justify a rebuke.

Consequently, the complaint herein must be dismissed, but, under the circumstances, I shall not allow costs to the defendant.

XII. This opinion may stand as the findings of fact and conclusions of law required under Equity Rule 70½, title 28, United States Code, § 723 (28 U.S.C.A. following section 723), and I will sign an order so providing. Hazeltine Corporation v. Radio Corporation (D.C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 618; Briggs v. United States, 45 F. (2d) 479, 480 (C.C.A.6); Stelos Company v. Hosiery Motor-Mend Corp. (D.C.) 60 F.(2d) 1009, 1013; Id., 72 F.(2d) 405 (C.C. A.2); Id., 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414; cf. also El Sol (D.C.) 45 F.(2d) 852, 856, 857; Southern Pac. Co. v. U. S., 72 F.(2d) 212 (C.C.A.2).

An order to this effect must be embodied in the final decree dismissing the complaint, without costs, which may be settled unless agreed on three days' notice.