## ARMSTRONG CORK COMPANY

v.

## WORLD CARPETS, INC., World Carpets of Los Angeles, Inc., World Carpets of San Francisco, Inc., World Carpets of Dallas, Inc., World Carpets of Chicago, Inc., World Carpets of Miami, Inc., World Carpets of New York, Inc., and World Carpets of Minneapolis, Inc.

### Civ. A. No. C77–49R.

United States District Court,
N. D. Georgia,
Rome Division.

March 23, 1978.

Oscar M. Smith, Smith, Shaw, Maddox, Davidson & Graham, Rome, Ga., David H. T. Kane, Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for plaintiff.

Julius R. Lunsford, Jr., Beveridge, Degrandi, Kline & Lunsford, Atlanta, Ga., Warren N. Coppedge, Jr., Mitchell, Mitchell, Coppedge, Boyett & Wester, Dalton, Ga., for defendants.

MURPHY, District Judge.

## STATEMENT OF THE CASE

1. This matter is before the Court as a declaratory judgment action. The plaintiff, Armstrong Cork Company, ("Armstrong") is seeking a determination that the name "Armstrong World Industries, Inc." does not infringe or unfairly compete with the defendant's name World Carpets, Inc. ("World Carpets"). The action arises under a Federal statute dated July 5, 1946, and commonly referred to as "The Lanham Trade-Mark Act". The defendant has counterclaimed alleging that the name Armstrong World Industries, Inc. is an infringement upon the trademark owned by the defendant and would constitute a form of unfair competition. Additionally, the defendant has alleged that the plaintiff's use of the name will dilute the distinctive qualities of the defendant's trademark and registered tradename, would violate the Uniform Deceptive Trade Practices Act of the State of Georgia, and would falsely designate a source of origin of the plaintiff's goods as emanating from the defendant.

2. A trial was held before this Court during the week of December 12, 1977. A jury was impanelled for a determination as to World Carpets' counterclaim for damages. The jury found that World Carpets was entitled to no exemplary or punitive damages. The jury also made advisory findings of fact.

## FINDINGS OF FACT

### The Parties

3. The plaintiff, Armstrong Cork Co., is a Pennsylvania corporation that manufactures home furnishing products, namely, resilient flooring (also referred to as hard surface flooring), ceiling materials, furniture, carpeting, and a line of specialties. The products are offered under various marks such as Armstrong, Brinton, Thomasville, and Evans & Black (E & B).

4. Armstrong is a domestic corporation with subsidiaries and affiliates in eight foreign countries and sales in approximately one hundred countries. With the exception of Brinton Carpets in Canada, none of the plaintiff's foreign subsidiaries or affiliates manufacture carpet.

5. Armstrong is best known for its hard surface flooring products. However, in the past plaintiff has made temporary ventures into the rug business. In the early part of this century, Armstrong manufactured or sold rugs under names such as Quaker Rugs, Fetterolf Rugs, and finally under the Deltox label which was discontinued in the early 1960's. Plaintiff acquired Brinton Carpets in Canada in 1966, a woven and tufted producer of carpeting, and Evans & Black of Texas and Georgia in 1967, a tufted carpet producer. Armstrong began and expanded its carpeting interests through purchase and acquisition.

6. Armstrong is owner of the following federal registrations for the trademarks THE INDOOR WORLD and INDOOR WORLD:

| Registration Number | Goods/Class | Date Granted |
|---|---|---|
| 936,299 | Interior decorating services—namely, advice and consultation to others in the use of floors, carpets, furniture, wall coverings and ceilings provided by applicant and others. Class 35. | June 20, 1972 |

7. These registrations are not for carpeting. The INDOOR WORLD registrations are not used for any specific product and do not appear on any carpet labels.

8. Armstrong is a large advertiser and has expended 180 million dollars in advertising over a number of years. This total includes 40 million dollars in which there was a reference to its "Indoor World" interior decorating services and cotton piece goods marks. However, only two million dollars has been spent in exclusive carpet advertising. Presently the plaintiff and its subsidiaries are one of the larger producers of carpet.

9. Since 1973, Armstrong has been operating a wholly owned subsidiary under the name Pacific World. Pacific World acts as the wholesale distributor of Armstrong carpets in California and surrounding areas. Pacific World does approximately six to seven million dollars of sales annually.

10. Armstrong has been considering a name change for some time. The name "Armstrong Cork" does not reflect the fact that cork material is no longer a significant ingredient in Armstrong's product line.

11. Among the names considered by Armstrong before settling on "Armstrong World Industries, Inc." were:

Armstrong International
Armstrong Industries
Armstrong Indoor World Industries

Armstrong Industries and Armstrong International could not be cleared for use in certain states because of existing companies with the identical names. Armstrong Indoor World Industries was not adopted because it was considered too restrictive.

12. Armstrong has incorporated in Delaware a name holder company, "Armstrong World Industries, Inc." and received permission to do business in that name in each of the fifty states.

13. Armstrong seeks a court determination through this action that the use of the name "Armstrong World Industries, Inc." as its corporate identification would not infringe on the rights of defendant, World Carpets.

14. Defendant, World Carpets, Inc., is a Georgia corporation which manufactures one product, tufted textile carpet. World Carpets was organized in 1954 at the inception of technical breakthroughs in the tufted carpet industry and is a closely held corporation with subsidiaries in seven metropolitan areas throughout the United States. World Carpets began on a rather small scale but has grown with the carpet industry and is now a multi-million dollar corporation with annual sales in excess of 100 million dollars.

15. World Carpets has established a reputation in the industry as a trend setter and innovator of technology, distribution techniques, carpet coloring, and styles. World Carpets manufactures Oriental rugs, Rya rugs, and carpeting in seventy styles of ten to twenty colors each. Nationwide, World Carpets has expended approximately 18 million dollars on newspaper, magazine and television advertising.

16. The defendant actively participates in foreign trade shows and is a major exporter of carpets. Advertising and sales are made in 25 countries, including Japan, England, Australia, and Germany. World Carpets' exports account for thirteen percent of all tufted carpet exported from this country by all manufacturers of tufted carpet.

17. Defendant is the owner of the following federal registrations for the trademarks WORLD and WORLD with a globe:

| Registration Number | Goods/Class | Date Granted |
|---|---|---|
| 787,616 | Textile carpeting Class 42 | March 30, 1965 |
| 1,044,266 | Textile carpeting Class 27 | July 20, 1976 |

18. Registration Number 787,616 has become incontestable pursuant to 15 U.S.C. § 1065.

19. Through defendant's national consumer magazine advertising, national trade magazine advertising, and national circulation of other advertising materials, the word "WORLD" has come to denominate and identify only World Carpets, Inc., of Dalton, Georgia in the field of manufacturing and distribution of carpeting.

20. World Carpets has been first or among the first in developing a float manufacturing system, a transporter system, flat and rotary printing systems, tak dyeing systems, electronic dyeing systems, one of the first to manufacture artificial turf, one of the first to establish diversified warehouse system, and the first to print Oriental and Rya rug patterns. World Carpets' manufacturing innovations serve to illustrate the extremely competitive nature of the tufted carpet market.

### Product and Distribution Overlap

21. Both Armstrong and World Carpets manufacture, wholesale and distribute tufted carpet products to distributors and retailers. Neither the plaintiff nor the defendant sell these products directly to the public. Armstrong and World Carpets are major competitors in the market with similar types of floor covering products, and to the extent that carpeting competes with hard surface flooring, plaintiff and defendant also compete in this area. Further, plaintiff's and defendant's distribution subsidiaries compete with each other in a market to retailers.

22. The competition assumes many forms. Armstrong and World Carpets seek to sell to the same consumers and the same markets. They have the same or similar sales and distribution methods. They advertise in the same magazines, often on adjacent pages. In many instances Armstrong and World Carpets market through the same retail stores and use the same toll free telephone number advertising service for consumer inquiries.

23. Both Armstrong and World Carpets furnish distributors and retailers with sample books which are binders containing carpet styles and sample colors, display racks known as falls or waterfalls containing styles, samples and colors together with styling booklets, notebooks, posters, circulars and other promotional and sales aid materials.

24. Armstrong and World Carpets manufacture their carpeting products out of the same fibers or same types of fibers acquired from the same sources and laminate the same with similar rubber or latex products onto jute. Many of the major rubber companies are in the tufted carpet business. Both Armstrong and World Carpets have integrated manufacturing processes which spin their own fibers into yarn. Both parties tuft, back and dye carpeting products using the same general methods. Basically, the manufacturing processes of the plaintiff and defendant are the same.

25. Because of similarity of manufacturing processes, styles and colors, there is a relatively low manufacturer identification with a particular fabric style of the tufted carpet produced. This low identification level is enhanced by the fact that when carpeting is installed no identification labels and marks can be seen.

26. Product identification is required of the manufacturer, however. The Federal Trade Commission and the FHA require the corporation's name or identification number to appear on every label affixed to carpeting samples and goods made by a manufacturer. The Magnuson-Moss Act requires identification of the manufacturer on labels on carpet which is warranted.

27. The Armstrong corporate name appears on every label of carpet marketed by Armstrong. The Armstrong name also appears on private labels of carpeting manufactured by Armstrong for others.

28. Armstrong would use the name "Armstrong World" for the purpose of company identification, but it would not be restricted, by law or self-control, to any particular use, alone or in combination, of either "Armstrong" or "World".

29. The nominative sense of the word "World" is arbitrary when used with carpet. It is not descriptive of the characteristics of goods or services of a carpet manufacturer and it does not indicate geographic origin. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486 (5th Cir. 1971).

30. When used with respect to the manufacture and distribution of tufted carpeting products, the word "WORLD" and "WORLD" with a globe signifies to the public the defendant and no other.

31. The carpet of the plaintiff is substantially similar to that of the defendant. Without a label the ordinary consumer could not distinguish between the products of carpet manufacturers. The carpet products of Armstrong and World Carpets have certain basic similarities. The products of each party are marketed in the same manner; in certain instances they are offered for sale by the same retailer. The carpet products are so closely related that use of substantially similar marks would create a strong likelihood of confusion.

## CONCLUSIONS OF LAW

32. This action arises under the Lanham Trade-Mark Act, as amended, 15 U.S.C. § 1051 et seq. Jurisdiction is invoked pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1121.

33. The trademarks "WORLD" and "WORLD" with a globe are valid, subsisting, owned by defendant and the use of the name "Armstrong World Industries, Inc." would constitute an infringement. See, *New World Carpets, supra.*

34. The federal trademark registration for WORLD has become incontestable under 15 U.S.C. § 1065 and World Carpets is entitled to the benefits of 15 U.S.C. § 1115(b).

35. Registration creates the presumption that World Carpets has the exclusive right to use the trademark "WORLD" in connection with carpets. 15 U.S.C. § 1057(b); *American Express Co. v. Lyons,* 193 USPQ 96 (E.D.Cal.1976).

36. The owner of a registered trademark does not have to prove secondary meaning. *Roto-Rooter Corporation v. O'Neal,* 513 F.2d 44, 46 (5th Cir. 1975); *Glamorene Products Corp. v. Boyle-Midway, Inc.,* 188 USPQ 145, 164 (S.D.N.Y.1975).

37. The central issue before the Court is whether plaintiff's new name would create a likelihood of confusion. That issue is a question of fact. *T.G.I. Friday's, Inc. v. International Restaurant Group,* 569 F.2d 895 (5th Cir. 1978); *Holiday Inns, Inc. v. Holiday Out in America,* 481 F.2d 445, 447 (5th Cir. 1973).

38. The Court's inquiry must consider the likelihood of confusion of all purchasers, from the experienced and intelligent to the naive and gullible. *Stork Restaurant, Inc. v. Sahati,* 166 F.2d 348, 359 (9th Cir. 1948); *Jockey International, Inc. v. Burkard,* 185 USPQ 201, 207 (S.D.Cal.1975).

39. Considerations relevant to the likelihood of confusion include the similarity of design, similarity of products, identity of retail outlets and purchasers, identity of advertising media utilized, the degree of care likely to be exercised by purchasers, and the existence of actual confusion. *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 381–82 (7th Cir. 1976); *Roto-Rooter, supra,* 513 F.2d at 45.

40. A party need not show actual confusion to prevail on a claim of trademark infringement; likelihood of confusion is, of course, sufficient. *Scarves By Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167, 1175 (2nd Cir. 1976); *Beef/Eater Restaurants, Inc. v. James Burrough Limited,* 398 F.2d 637, 639 (5th Cir. 1968); *Fotomat Corporation v. Cochran,* 437 F.Supp. 1231, 1244 (D.Kan.1977).

■ 41. One seeking to utilize a name already in use in a particular area and with respect to a particular product has a duty to name his goods so as to avoid all possibility of confusion. *AMP Inc. v. Foy*, 540 F.2d 1181, 1187 (4th Cir. 1976); *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 758 (2nd Cir. 1960).[1]

■ 42. The grant of a corporate charter in Delaware to "Armstrong World Industries, Inc." and clearance of that name for use in all fifty states does not constitute a license to infringe defendant's trademark nor will it provide a defense. *Little League Baseball v. Daytona Beach Little League*, 193 USPQ 611, 614 (M.D.Fla.1977). See, *Seaboard Finance Company v. Martin*, 244 F.2d 329, 331–32 (5th Cir. 1957).

■ 43. Third party uses of the word "World" are, at most, but one of the elements to be weighed in a determination of likelihood of confusion. *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967).[2]

### Fair Use

44. Armstrong contends the addition of the word "World" to the Armstrong name is statutorily protected. As provided in 15 U.S.C. § 1115(b)(4), it is a defense:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin . . . . .

■ 45. The "fair use" defense protects the use of an otherwise unavailable mark if the use is only for a descriptive purpose. See, *Q–Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144, 148 (3rd Cir. 1953).

■ 46. A fair use is a descriptive use of a name to indicate the nature, quality, and purpose of the goods themselves and not the name of the manufacturer or the distributor of the goods. Use of the name "Armstrong World Industries, Inc." would be nominative and as a trademark. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12 (2nd Cir. 1976). See, *Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962); *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 499 (2nd Cir. 1962).

■ 47. At most, the addition of "World" to "Armstrong" would serve to describe the potential range of plaintiff's business, not the goods or services of that business. See, *Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079, 1082 (2nd Cir. 1970).

48. The word "World" is far too broad to suggest any identifiable geographic place of origin. *New World Carpets*, supra, 438 F.2d at 486.

### Secondary Meaning

■ 49. As an alternative basis for a finding of infringement, it is to be noted that trademark protection is afforded by focusing upon the "*use* of words, not on their nature or meaning in the abstract". (emphasis in original). *Venetianaire*, supra, 429 F.2d at 1082; *Abercrombie & Fitch*, supra, 537 F.2d at 12.

■ 50. If, through use and association over a period of time, a word has come to

---

1. The rationale for this rule has been best expressed by Judge Learned Hand. "Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field". *Lambert Pharmacal Co. v. Bolton Chemical Corp.*, 219 F. 325, 326 (S.D.N.Y.1915).

2. For the proposition third party uses would be completely irrelevant to plaintiff's infringement of the WORLD trademark, see, *AMF Incorporated v. American Leisure Products*, 474 F.2d 1403, 1406 (Cust. & Pat.App.1973); *Tisch Hotels Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614 (7th Cir. 1965); *Admiral Corp. v. Penco, Inc.*, 203 F.2d 517, 521 (2nd Cir. 1953).

stand in the minds of the public as a name or identification for a particular party's product, that word has acquired a secondary meaning and is entitled to protection. *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 509 (2nd Cir. 1969); *Safeway Stores,* supra, 307 F.2d at 498–499. As noted, in division 30, the name "WORLD" when used with respect to carpet manufacturers signifies the defendant and its carpet.

### State Law Violations

51. World Carpets has counterclaimed, alleging violation of the Georgia "Fair Business Practices Act of 1975" and, specifically, Ga.Code Ann. § 106–1203. World Carpets has enumerated the violation as involving the following subsections:

(1) Passing off goods or services as those of another;

(2) Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(3) Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with, or certification by, another. . . .

52. The evidence adduced at trial disclosed no actual confusion or actual misunderstanding. This was a declaratory judgment action and plaintiff never used the name "Armstrong World Industries, Inc." in connection with its products. The jury expressly held defendant was not entitled to an award of damages and that determination is supported by the evidence.

IT IS THEREFORE ORDERED, that the plaintiff, Armstrong Cork Company, and its attorneys, agents, employees, representatives, and all others in privity with them, be enjoined and restrained from using the name "Armstrong World Industries, Inc."