## UBEDA v. ZIALCITA.

APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 77. Submitted December 6, 1912.—Decided January 6, 1913.

One, whose registered trade-mark is manifestly an imitation of an earlier but unregistered trade-mark, cannot restrain a third party from using it.

The Philippine Trade-mark Act expressly denies the right of one fraudulently using a trade-mark to recover.

Section 13 of the Treaty with Spain of 1898, protecting industrial property in the ceded territory, will not be construed as contravening principles of morality and fairness and as protecting a trade-mark fraudulently registered prior to the treaty.

A statute which introduces no new rule is not retrospective.

Even if a trade-mark be not registered, if it be well known, it is an imposition on the public to use an imitation of it.

Even if a statute makes a certificate of trade-mark conclusive, it must be taken subject to the general principle of law embodied in the statute to the effect that trade-marks fraudulently adopted are not protected.

Where it does not clearly appear to the contrary, this court will assume that the same principles of honesty and fairness prevail in Spain as in our own law.

13 Phil. Rep. 11, affirmed.

THE facts, which involve the right to use a trade-mark in the Philippine Islands, are stated in the opinion.

*Mr. A. B. Browne, Mr. Alexander Britton, Mr. Evans Browne* and *Mr. W. A. Kincaid* for appellant.

No appearance for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff and appellant is a manufacturer of gin and sues to restrain the use of a trade-mark like his own

and to recover double damages. The trade-mark consists of two concentric circles having the words Ginebra de Tres Campanas and the plaintiff's name between them, and in the centre a device of three bells (Tres Campanas) connected at the top by a ribbon and some ears of grain, with the words Extra Superior under the mouth of the bells. The plaintiff's autograph is reproduced across the middle of the circular space and the bells. More detail is unnecessary; but it may be mentioned that the plaintiff claims title under a grant from the Governor General dated December 16, 1898, and that the mark covered by the alleged grant had underneath the circles the word Amberes (Antwerp), indicating imported gin, while that now used has Manila in the same place and is applied to gin made in the Philippines.

It may be assumed that the defendant's design has a deceptive resemblance to the plaintiff's notwithstanding a change from Tres Campanas to Dos Campanas and the substitution of the defendant's autograph for the plaintiff's. And whether the plaintiff has a title to the mark now used or not it also may be assumed that he might recover under the Philippine act of March 6, 1903, No. 166, § 4; Compiled Acts, p. 180, § 58, but for the following facts, on which the defendant had judgment in both courts below.

The plaintiff's trade-mark in its turn closely imitates in most particulars a much earlier and widely known trade-mark of Van Den Bergh & Co., of Antwerp. It is true that in the latter there is but one bell, and that the title correspondingly is Ginebra de la Campana, but the intent to get the benefit of the Van Den Bergh device is too obvious to be doubted. We do not go into the particulars of the different registrations, &c., of this latter, beginning with a Spanish certificate to the Antwerp firm in 1873. For although the plaintiff elaborately argues that under the Spanish regime trade-mark rights could be

acquired only by statutory registered grant; that Van Den Bergh & Co. never acquired any such rights in the Philippines; that if they did they lost them by failing to register or lapse of time, and that he was free to get a registered title as against any certificate of theirs; those questions are immaterial in this case. With or without right the earlier trade-mark was in widespread use and well known, and the obvious intent and necessary effect of imitating it was to steal some of the good will attaching to it and to defraud the public. The courts below found the fraud and that both plaintiff's and defendant's marks were nothing more than variations upon the earlier mark.

In such a case the Philippine act denies the plaintiff's right to recover. Act No. 666, § 9. See § 12, and No. 744, § 4. Compiled Acts, §§ 63, 66. It is said that to apply the rule there laid down would be giving a retrospective effect to § 9 as against the alleged Spanish grant of December 16, 1898, to the plaintiff, contrary to general principles of interpretation and to Article 13 of the Treaty of Paris, April 11, 1899, providing that the rights of property secured by copyrights and patents shall continue to be respected. But the treaty, if applicable, cannot be supposed to have been intended to contravene the principle of § 9, which only codifies common morality and fairness. The section is not retrospective in any sense, for it introduces no new rule. See *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218. Imposition on the public is not a ground on which the plaintiff can come into court, but it is a very good ground for keeping him out of it. Even if Van Den Bergh & Co. had no registered title and no such other rights under Spanish colonial law as they have under Act No. 666, § 4, the imposition on the public was still there and though not a matter of which the defendant could complain, it was a matter to which he could refer when the plaintiff sought to exclude him from doing just what the plaintiff had done himself. This

certainly would have been our law, and we should assume, if material, that the same doctrine would have prevailed in Spain, in the absence of the clearest proof to the contrary, which we do not find in the record or the brief.

What we have said with reference to the plaintiff's claim under the Treaty applies in substance to his argument that by § 14 of Act No. 166 the Spanish certificate is conclusive evidence of the plaintiff's title. That section must be taken to be subject to general principles of law embodied in other sections to which we have referred.

If there was any claim intended to be put forward on the ground of unfair competition, the prayers of the complaint and the plaintiff's testimony show that such claim depended fundamentally on the alleged infringement of trade-mark. Any matters of fact in dispute were sufficiently disposed of by the concurrent findings of the courts below.

*Judgment affirmed.*