## INDUSTRIAL RAYON CORPORATION v. DUTCHESS UNDERWEAR CORPORATION.

#### No. 424.

Circuit Court of Appeals, Second Circuit. July 19, 1937.

Sullivan & Cromwell, of New York City, and Tolles, Hogsett & Ginn, of Cleveland, Ohio (Inzer B. Wyatt, of New York City, and Louis S. Peirce, of Cleveland, Ohio, of counsel), for complainant-appellant.

Herbert Kaufman, of New York City (Asher Blum and Hugo Mock, both of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit to enjoin infringement of complainant's registered trade-mark "Spun-lo" and to restrain unfair competition by the defendant because of the use of the mark "Sunglo" by the latter on competing goods. No accounting is prayed for. The District Court dismissed the bill on the ground that the word "Sunglo" had been used by others prior to registration or use of "Spun-lo" by the complainant, and the latter appeals. For reasons to be stated, we differ with the conclusion and think the complainant's prayer should be granted.

The goods to which the trade-marks "Spun-lo" and "Sunglo" have been applied by the complainant and the defendant respectively are women's undergarments of rayon silk. They are similar in appearance and texture and are in active competition. The complainant began to use "Spun-lo" to designate its fabrics on September 15, 1931, filed its application for the trade-mark on May 6, 1932, and obtained a certificate of registration on June 6, 1933. The mark was affixed by attaching to the fabrics hanger labels on which it was inscribed. In many instances these labels also bore in addition the individual marks of the customers.

Since complainant began to use "Spun-lo," it has spent about $500,000 in advertising it, and the mark finally became so well known that many department and retail stores have advertised it at their own expense. Over four million pounds of "Spun-lo" fabric had been sold by complainant up to the date of the trial. There can be no doubt that the name indicates to a wide public the origin of the fabric and that it is well known through a great part of the United States.

In February, 1934, about two years and five months after the complainant had adopted "Spun-lo" as its trade-mark, the defendant took the name "Sunglo" for its mark and used it on the same kind of rayon fabric in the same manner as complainant has done; namely, by employing hanger labels bearing the word "Sunglo." It has, however, done little or no advertising of the mark except what has been put out by the customers.

The name "Sunglo" so closely resembles "Spun-lo" phonetically that instances of confusion were proved at the trial in the case of a large department store in Kansas City, of another at Lafayette, Ind., likewise in New York and in Newark, N. J. The defendant was aware of the existence and use of complainant's trade-mark before adopting "Sunglo" for its own competing business. Under these circumstances the trial court properly found that "the defendant chose a word which came far too near the plaintiff's mark" and "attempted to imitate 'Spun-lo' with the hope of not running the risk of being held guilty of infringing it."

The only defense worthy of serious consideration is that of the prior registration of the word "Sunglo" by Brainerd & Armstrong Company and its prior use by that company for artificial silk thread, also the prior registration of "Sunglow Satin" by Smith-McCord-Townsend Dry Goods Company for mercerized sateen in linings and underwear. It was because of these defenses that the trial court held the trade-mark invalid and dismissed the bill to enjoin infringement and unfair competition. Upon the sufficiency of these defenses the whole case turns, for without them the complainant has established a valid trade-mark and infringement by defendant through the use of a confusing mark.

On July 25, 1922, the name "Sunglo" was registered by Brainerd & Armstrong for artificial silk thread in Class 43 covering "Thread and Yarn." They afterwards used "Sunglo" on embroidery thread, sweater thread, balls of embroidery thread, and rayon sewing thread. Brainerd & Armstrong changed their name to Corticelli Silk Company in 1926, and in 1932 merged with Belding-Hemingway Company, and after the merger took the name of Belding-Hemingway-Corticelli Company. The business of this corporation is in silk threads, silk fabric, and silk hosiery. It does not make or sell undergarments for women or fabric for such undergarments.

In 1922 Brainerd & Armstrong began to use the mark "Sunglo" on an artificial rope silk which was sold for an embroidery thread. In 1926 or 1927 Corticelli Silk Company put a rayon sewing thread on the market and sold it under the name "Sun-

glo," but discontinued the line after about two years because rayon thread had not then developed a proper elasticity. For a time prior to 1930 the mark "Sunglo" was used by the Corticelli Silk Company on rayon yarn to display the color line in which they put out the sweater yarn for hand knitting and crocheting of sweaters, caps, gloves, scarfs, and handkerchiefs. After the merger with Belding-Hemingway in 1932, an embroidery thread known as "Texto-Rope," which had been sold by the latter, was kept on the market and the use of "Texto-Rope" as a trade-mark was retained and the name "Sunglo" was discontinued. It has not been in actual use since except as used by the defendant to designate its garments. No "Sunglo" thread was carried in stock by the merged company.

Neither Brainerd & Armstrong, Corticelli Silk Company, nor Belding-Hemingway-Corticelli Company ever used the name "Sunglo" on fabric.

In spite of the fact that the Belding-Hemingway-Corticelli Company had discontinued the use of the mark "Sunglo" in 1932, Mr. Armstrong, its vice-president, testified that it was not their intention to abandon that mark. But on January 24, 1936, about a month after the present suit was begun, and in response to a request from the defendant that it be given an assurance by Belding-Hemingway-Corticelli Company that the name "Sunglo" on underwear would not affect the latter in any way, Mr. Armstrong wrote to the defendant that his company did not care to give up their mark "Sunglo," or in any way impair their right to its use. He added, however, that he did not believe its use on knitted rayon would adversely affect its value to them and that they were "making no objection" to defendant's registration.

On December 30, 1924, Smith-McCord-Townsend Dry Goods Company of Kansas City secured registration of the trade-mark "Sunglow Satin" which is stated in its application for registration to have been used since December, 1923, for mercerized sateen in linings and underwear in Patent Office Class 42 covering "Knitted, netted, and textile fabrics." The fabric referred to in this registration was cotton and not rayon, and it has not been shown to what extent it has ever been used or in what territory or, indeed, that it was in use at all when the complainant began to use the mark "Spun-lo" in connection with its merchandise.

Upon the foregoing record we cannot agree with the conclusion of the trial court that the complainant has no right to protect its trade-mark "Spun-lo" against a defendant which has chosen a deceptive mark likely to take away the former's trade in competing merchandise. Registration of the mark "Sunglo" added nothing to the rights of the defendant, of Brainerd & Armstrong, of Belding-Hemingway-Corticelli Company, or of Smith-McCord-Townsend Dry Goods Company. The only advantage in the registration was the procedural one of a remedy in the United States courts against infringers in case the trade-mark was valid. The substantive rights of the registrants depended on whether, in view of the particular business situation, they had a mark which, under all the conditions, they were entitled to protect.

A trade-mark is not property in the ordinary sense but only a word or symbol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trade-mark beyond these. It cannot be assigned in gross and may only be transferred with a business to identify the merchandise of the owner. The question in each case is not whether the mark has been registered, or even whether it has at one time been used by the person seeking protection, but whether, as applied to a particular line of goods, it signifies the source. If, as in the case of Smith-McCord-Townsend Dry Goods Company, there is no showing that the mark "Sunglow Satin" signifies the goods of that concern, registration will avail nothing. We held in DuPont Cellophane Co., Inc., v. Waxed Products Co., Inc., 85 F.(2d) 75, that the word "cellophane" because of wide advertising had come to signify a cellulose product rather than DuPont's wares. Here as in that case neither the registration of the mark nor the original appropriation and use of it on the goods of the registrant will suffice to protect the person who adopted the mark. In each the critical question is whether, under existing conditions, the mark signifies that the party claiming protection is the source of the merchandise.

■■ The trial judge was right in holding that Belding-Hemingway-Corticelli Company might ordinarily extend the protection of their mark "Sunglo" from rayon embroidery thread or sweater yarn to goods of as near a class as women's rayon underwear. L. E. Waterman Co. v. Gordon, 72 F.(2d) 272 (C.C.A.2); Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, L.R.A. 1918C, 1039 (C.C.A.2). But here the use of that mark had been discontinued for four years and, though not abandoned, had ceased to identify the goods of Belding-Hemingway-Corticelli Company. The trifling sales of "Sunglo" knitting yarn said to have been made in the summer of 1935 were termed by Mr. Armstrong not of importance. (F. 401.) This admission, coupled with his statement that there was practically no such stock left, does not substantially qualify his repeated assertions that "Sunglo" was discontinued in 1932. The trifling sales did not maintain the mark as identifying Belding-Hemingway-Corticelli goods. When Mr. Armstrong wrote that the defendant's use of the word "Sunglo" on rayon underwear would not injure its rights, he in substance declared that the use of "Sunglo" by his company either was permanently discontinued or limited to use in connection with thread. The declaration was by a man wholly familiar with the situation and was the equivalent of a statement that "Sunglo" did not cover fabrics and was not confusing when employed by defendant on a line of goods so different from embroidery thread as rayon underwear. His letter indicates that in his opinion rayon thread and rayon underwear were not in competition and that the uses of the marks "Spun-lo" and "Sunglo" were not competitive when employed in those different fields. His opinion is strongly confirmed by the disuse of the mark by his company even upon thread.

Under the circumstances it seems clear that the mark "Sunglo" no longer signifies to the public the goods of Belding-Hemingway-Corticelli Company, not even where the product is embroidery thread, and certainly not where it is rayon underwear to which that company has never applied it in the past. A technical abandonment did not have to occur in order that Belding-Hemingway-Corticelli Company should lose the right to protect the mark. Indeed, it might perhaps still prevent its use on rayon thread. The point is that the mark "Sunglo" has ceased to mean the goods of Belding-Hemingway-Corticelli Company, or at most only means rayon thread and that to an insignificant number of their customers. Inasmuch, therefore, as that company could not preclude the complainant from using "Spun-lo" on rayon underwear, the former's mark "Sunglo" does not anticipate "Spun-lo" when used on such articles. The situation was quite different in Ubeda v. Zialcita, 226 U.S. 452, 33 S.Ct. 165, 57 L.Ed. 296, for there the earlier trade-mark was still in widespread use and had not been discontinued as in this case. Here Belding-Hemingway-Corticelli Company had discontinued the use of "Sunglo" when the defendant adopted and used that mark on the same class of competing goods that bore the mark "Spun-lo." The step was calculated to deceive as to the source of the merchandise and to divert complainant's customers. It was a plain infringement.

■ Defendant's counsel further argues that "Spun-lo" is a descriptive term signifying only a small number of turns in spinning thread and, therefore, not a valid trade-mark. We think the court below was right in holding that "Spun-lo" has no such meaning when applied to a fabric and probably not even when applied to a thread, and that it is essentially a fanciful word which under all the authorities is the proper subject of a trade-mark.

For the above reasons we hold that the decree dismissing the bill should be reversed and that a decree should issue for the complainant granting an injunction against the defendant restraining the use of the mark "Sunglo" upon its goods.

Decree reversed, with costs.