George **TSERPELIS, Michael Karanasios, and Susan Anastakos, As Mobile Soft Ice Cream Truck Franchisees of Mister Softee, Inc., Plaintiff,**

v.

**MISTER SOFTEE, INC.; Mister Softee Eastern New York Division, Inc.; Ro–Fi Corporation; C & C Distributors, Inc.; and Cones & Things, Inc., Defendants.**

No. CV–99–2641 JM.

United States District Court, E.D. New York.

Sept. 8, 1999.

Andrew B. Schultz, Lake Success, NY, for the plaintiff.

David J. Sutton, Garden City, NY, Tartamella, Tartamella & Fresolone, Hauppauge, NY, for the defendant.

*Memorandum of Decision and Order*

MISHLER, District Judge.

Plaintiffs move pursuant to Fed.R.Civ.P. 65, for a preliminary injunction enjoining, restraining and prohibiting the defendants from:

(A) terminating or attempting to terminate plaintiffs' present franchisee relationships with defendants as "Mister Softee" mobile soft ice cream truck franchisees;

(B) harassing, vandalizing, threatening or interfering in any way, directly or indirectly, with plaintiffs' operation, storage or maintenance of plaintiffs' "Mister Softee" mobile soft ice cream trucks; and

(C) interfering, directly or indirectly, with plaintiffs' own purchasing and obtaining of all supplies, items, goods and services, relating to operation of plaintiffs' "Mister Softee" mobile soft ice cream trucks, from manufacturers, wholesalers, distributors and suppliers other than defendants.

### THE PARTIES

#### DEFENDANTS

Mister Softee, Inc. owns the trademark and trade name "Mister Softee." Mr. Softee franchises Mister Softee mobile ice cream trucks selling soft ice cream and other products to the public. Approximately 560 Mister Softee trucks sell Mister Softee soft ice cream in Connecticut, Delaware, Georgia, Illinois, Maryland, New Jersey, New York, Ohio, Pennsylvania and Virginia.

Mr. Softee Eastern New York Division, Inc., ("Softee E.N.Y.") is Mr. Softee's distributor in Queens, Nassau and Suffolk Counties.

Ro–Fi Corporation is an operating entity of Softee E.N.Y.

C & C Distributors, Inc. and Cones & Things, Inc. provide and supply Mister Softee franchises with merchandise and goods.

### PLAINTIFFS

George Tserpelis purchased his truck and route from Ronald Baretela, a Mister Softee franchisee, in July 1997. He presently operates two Mr. Softee trucks in Jackson Heights in the Borough of Queens. Baretela assigned his Dealer Franchise Agreement to Tserpelis on or about July 18, 1997.

Michael Karanasios and Susan Karanasios purchased their trucks and route from Nicholas Mavidas, Mister Softee franchisee, on or about July 5, 1996. They operate three Mister Softee trucks in Jackson Heights in the Borough of Queens.

The Dealer Franchise Agreements under which plaintiffs received the right to sell Mister Softee soft ice cream and other products provides in pertinent part:.

8. Assignment.

The franchise granted by this agreement is not assignable by Dealer except upon the following terms:

(a) Dealer shall first obtain the written consent of Distributor and Mister Softee, Inc.

(b) The purchaser shall be a financially responsible person acceptable to Distributor and Mister Softee, Inc.

(c) The purchaser shall enter into a new Dealer Franchise Agreement with Distributor in the form then current, before financing and sale contract have been completed and executed and title has been transferred.

\* \* \* \* \* \*

4. REQUIREMENTS OF DEALER

(a) In view of the fact that the consumer brand name "Mister Softee" and the "Mister Softee" ice cream truck franchises have been made valuable through the efforts of hundreds of "Mister Softee" Dealers in conforming to uniform plans, procedures and policies in conducting the "Mister Softee" mobile ice cream and frozen dessert business for the sale of soft-service ice cream, hard ice cream, frozen desserts, novelties, stick items and other products specifically approved and authorized by Mister Softee, Inc., Dealer agrees to maintain and operate his "Mister Softee" truck(s) in strict conformance with the plans, procedures and policies therefor from time to time prescribed by Mister Softee, Inc. and Distributor.

\* \* \* \* \* \*

(e) Dealer agrees to purchase all supplies which are to be distributed to the consuming public (with or without processing) from: (a) Mister Softee, Inc., (b) an approved supplier of Mister Softee, Inc.; or (c) Any supplier whose product meets the standards and specifications set by Mister Softee, Inc. from time to time for a particular item.

With respect to the purchase by dealer of ice cream and/or ice milk mix, and notwithstanding anything to the contrary contained herein, the ice cream and/or ice milk mix shall comply with the standards and specifications set by Mister Softee, Inc. for the specific geographic area at the time of purchase. Mister Softee, Inc. shall have the right to request a sample from the Dealer of supplies utilized by the dealer for testing by Mister Softee, Inc. Dealer shall have the right to request Mister Softee, Inc. to test any item, at Dealer's expense, to determine whether it meets the current standards and specifications. Mister Softee, Inc. shall furnish Dealer upon Dealer's written request, delivered by Certified Mail, return receipt requested, or by personal delivery with written acknowledgment of receipt obtained from Mister Softee, Inc., its

standards and specifications for any item of supply and its list of authorized suppliers. The failure of Mister Softee, Inc. to provide such written standards and specifications or list of authorized suppliers to Dealers within even (7) days from Dealer's written request shall permit Dealer to purchase such item of supply from any source reasonably deemed by the Dealer to be comparable to products sold by Mister Softee, Inc. or its authorized suppliers.

11. TERM

This Agreement shall continue in force for twenty years from its date and may be extended by Dealer for one additional period of ten years upon ninety days written notice to Distributor and Mister Softee, Inc., prior to the end of said terms.

### THE COMPLAINT

The complaint alleges a violation of the Sherman Act, 15 U.S.C. § 1.[1]

The alleged violation of the Sherman Act is based on the refusal of Mister Softee to issue a Dealer Franchise Agreement to plaintiffs upon the same terms and conditions contained in the agreements issued to Baretela and Mavidas. The complaint alleges the violation as follows:

29. In or about late 1998 or early 1999, defendants submitted a revised proposed franchise agreement to plaintiffs, which differed from the pre-existing Exhibit B in at least three material respects: (1) the proposed term was changed from 20 years with a 10 year renewal; to 10 years with a 5 year renewal; and (2) the franchisees would be *precluded* from buying supplies from "any supplier" whose products met Mister Softee, Inc. "standards and specifications" for the non-proprietary and non-

secret ice cream product mix approved by Mister Softee, Inc. for over 40 years; and (3) plaintiffs would be forced to utilized (sic) defendant's hand-picked "depot" instead of having reasonable choice to arrange appropriate depot facilities elsewhere.

30. Instead, franchisees such as plaintiffs would be forced into an illegal "tying arrangement" by which they would be required to buy all ice cream products and mix and supplies from and through defendants themselves, although defendants do not manufacture any of the mix and supplies but obtain it from defendants' designated sources; and would be forced to use only defendants' hand-picked depot operated by defendants' own representatives such as Richard Zoly.

The Court held an evidentiary hearing. The following background facts, contained in the affidavit of James F. Conway, Jr., General Manager of Mister Softee, are not in dispute:

Mister Softee is the franchisor of Mister Softee mobile ice cream truck businesses which sell soft-service ice cream and other products from ice cream trucks. Mister Softee franchisees operate in Connecticut, Delaware, Georgia, Illinois, Maryland, New Jersey, New York, Ohio, Pennsylvania and Virginia.

Mister Softee franchisees are licensed to use Mister Softee's trade names, service marks and trademarks and to operate under the Mister Softee business system, using specifically designed mobile trucks with special equipment, equipment layouts, interior and exterior accessories, menu displays, identification schemes, products, standards, specifications, proprietary marks and information. The relationship between Mister Softee and its franchisees

1. The Sherman Act provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony.

is governed by the terms and conditions of the Mister Softee Dealer Franchise Agreement entered into between Mister Softee or its distributor and each franchisee.

Mister Softee owns the trademarks "Mister Softee" and related logos which are registered on the Principal Register of the United States Patent and Trademark Office at Registration Nos. 2128918, 0667335 and 0663456. Mister Softee also has a trademark application pending for the sensory mark which consists of the Mister Softee musical jingle (Serial Number 74–619989). Mister Softee also created and uses the marks "Tu–Tone Cone", "Twinkletop Conehead", "Cherry Top Conehead", "Chocolate Top Conehead" and "Devil's Delight Conehead". Mister Softee first began using its marks and trade dress in 1956 and first registered the above marks in 1958. The Mister Softee musical jingle was composed for Mister Softee in 1960.

Mister Softee has spent over 1.5 million dollars developing and promoting its marks.

Mister Softee franchisees are required to execute a Mister Softee Dealer Franchise Agreement for each truck the franchisee operates. A copy of Mister Softee's current Franchise Agreement is attached as Exhibit "A." [2]

Among other things, the standard Mister Softee Dealer Franchise Agreement requires the franchisee to purchase ice cream mix and supplies from either Mister Softee or Mister Softee's approved supplier.

Mister Softee franchisees are required to purchase their ice cream mix and related supplies from Mister Softee or Mister Softee's approved suppliers. This purchase requirement enables Mister Softee to ensure that the ultimate consumer obtains a quality product.

Conway worked with Pramelait Welsh Farms ("Welsh Farms") to develop a proprietary 8% butterfat soft serve mix. A product was developed with Welsh Farms in which the soft serve mix would be 8%.

Welsh Farms has been Mister Softee's approved supplier since the late 1960's in all areas in Pennsylvania, New Jersey, New York and Delaware, except for the area of New York City, New York.

In that area, Horstmann's Mix & Cream, Inc. ("HMC") had been Mister Softee's supplier since the late 1950's.

In 1997, Mister Softee began receiving complaints from franchisees regarding the quality of HMC's mix. Specifically, Mister Softee franchisees complained that the mix was not always tip to standards.

As a result of the complaints Mister Softee received regarding HMC, Mister Softee felt it necessary, to protect the good will associated with its trademark, to switch to Welsh Farms.

Historically, Welsh Farm's mix has always been cheaper than HMC's mix. For example, in September 1998, Welsh Farms was selling its mix to wholesale distributors for $20.83 per case and HMC was selling it's mix for $26.00 per case. This year, when Mister Softee switched their approved supplier from HMC to Welsh Farms, HMC lowered its mix to a price below that offered by Welsh Farms and offered to sell direct to retail customers (i.e., Mister Softee franchisees).

### PLAINTIFFS' POSITION

Plaintiffs claim that the Dealer Franchise Agreement that Mister Softee executes:

(a) requires that they "buy all ice cream products and mix and supplies from and through defendants themselves ... [including tied products consisting of] toppings, syrups, bottled soft drinks and wa-

---

2. As noted above, the Baretela and Mavidas Dealer Franchise Agreements required the purchaser of the agreement to "enter into a new Dealer Franchise Agreement with Distributors in the form then current." (Par. 8(c)).

ter, novelties and paper goods." (Aff. of George Trespelis, Esq., ¶ 30 and ¶ 38.)

(2) forced to use only defendants' hand-picked depot operated by defendants' own representatives.

■ We dispose of plaintiffs' challenge to Mister Softee's requirement that the trucks remain at a specified depot overnight for inspection by defendant Ro–Fi Corporation. We find that such inspection and examination is reasonable and necessary. It provides Mister Softee with a means for determining whether the conditions in the preparation and sale of the soft ice-cream mix are complied with.

We turn to the claim of tied products.

### DISCUSSION

■ The Court in *Gonzalez v. St. Margaret's House Housing Dev. Fund*, 880 F.2d 1514, 1516–17 (2d Cir.1989) defines "tying arrangement" and the basis of finding a Sherman Act violation as:

a tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). A seller violates the antitrust laws through a tying arrangement when it uses its market power over one product to "force" a consumer to purchase a second product. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). In the past we have required allegations and proof of five specific elections before finding a tie illegal; first, a tying and a tied product, second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied products; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a "not insubstantial" amount of interstate commerce

in the "tied" market. *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56–57 (2d Cir.1980).

Plaintiffs contend that the Mister Softee trademark is a tying product and the soft ice cream mix is a tied product. We are guided by the principle that clearly shows that the trademark Mister Softee and the ice cream mix are inseparable and reject the plaintiffs' contention. The use of a trademark as the tying product is discussed by the Court in *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 96–97 (2d Cir.1985):

The "metes and bounds" of a trademark are defined by the perceptions that exist in the minds of the relevant buying public. It is this customer perception which decides what property rights the trademark owner has. These property rights are often infringed; and what may be thereby impaired is both the consumer's right to be free from confusion and the trademark owner's right to a non-confused consumer and to control of his product's reputation. *See 1* McCarthy, *Trademarks and Unfair Competition*, § 2.6 (2d ed.1984). This court many years ago stated:

[T]rademark is not a property in the ordinary sense but only a word or symbol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks.

*Industrial Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33, 35 (2d Cir. 1937), *cert. denied*, 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100 (1938).

Another way of putting it is that a trademark epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of good will is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with

each purchase—this is the *reason d'etre* for the sale. We need not know the specific reason behind the goodwill, only that it exists. Presumably, this is why independent businessmen such as Yonkers seek to obtain a license from a trademark owner and "pay for the privilege that gives a reasonable expectancy of preference." McCarthy, *supra* at § 2.8.

\*  \*  \*  \*  \*  \*

The facts found below show that, under these trademark principles stressing the perception of the consuming public, the trademark and the product in this case are inseparable. The only product ultimately sold, the gasoline, comes from appellee Power Test, and, as the district court found, "[t]his is precisely the product the consumer attaches to the trademark Power Test." That trademark is thus inseparably connected with the gasoline.

Mister Softee's right to require franchisees to purchase their ice cream mix and related supplies from Mister Softee's approved supplier is found in this court's decision in *Esposito, et al., v. Mister Softee, et al.* (unpublished) decided December 14, 1979:

[Ice Cream Formula]

The issue is a closer one regarding the Mister Softee mix. Maintaining the quality of this product is, of course, essential to the continuing success of Mister Softee. In a similar context, Judge Friendly has indicated:

Although instances of impossibility of control through specification may indeed be rare in cases involving the proper functioning of mechanical elements of a machine ... such cases are scarcely relevant to the problem of controlling something so unsusceptible of precise verbalization as the desired texture and taste of an ice cream cone or sundae; that Carvel was able to specify this to its source of supply, whose product it regularly checked,

does not show that administration could be confined to 400 dealers.

*Susser v. Carvel,* 332 F.2d 505, 520 (2d Cir.1964) (majority opinion).

The tied products consist of toppings, syrups, bottled soft drinks and water, novelties and paper goods. The toppings (including sprinkles, chopped nuts and shredded coconut) served with soft ice cream, are part of the service of the tying product, i.e., the ice cream mix. The court does not determine the right of Mister Softee to designate the source of supply for paper towels, napkins, straws, spoons, etc. Pending the outcome of the present action on the merits, however, plaintiffs' purchase of such products on the open market will not be deemed by the Court to violate the Dealer Franchise Agreement.

### THE STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

The burden is on the plaintiffs to show: (a) that they are likely to suffer irreparable injury and (b) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Maryland Casualty Co. v. Realty Advisory Board,* 107 F.3d 979, 984 (2d Cir.1997); *Reuters Ltd. v. United Press International,* 903 F.2d 904, 907 (2d Cir.1990).

Plaintiffs may avoid the irreparable harm they claim by executing the Dealer Franchise Agreement offered to them.[3] They waive their claim by refusing to continue as Mister Softee dealers.

I find no likelihood of success on the merits. I also find no serious questions going to the merits to make them a fair ground for litigation.

Plaintiffs' motion for a preliminary injunction is denied, and it is

SO ORDERED.

3. The agreement is appended to this Memorandum of Decision and Order.

# Dealer Franchise Agreement

This Agreement, made this _____ day of _____, 19_____, by and between

_____

a Sales Franchise Distributor for Mister Softee, Inc., a corporation having its principal place of business at Runnemede, New Jersey (hereinafter

called "Distributor"), and _____

of _____ (hereinafter called "Dealer");

### WITNESSETH

THAT WHEREAS, Distributor, an independent contractor, has the franchise from Mister Softee, Inc. to sell "Mister Softee" mobile trucks, equipment, supplies, parts and merchandise, to appoint Dealers and to license use of the trademarked name "Mister Softee" in the territory hereinafter described; and

WHEREAS, Dealer desires to buy one or more "Mister Softee" mobile ice cream trucks for the sale of soft-serve ice cream, hard ice cream, frozen desserts, novelties, stick items, and other products as may be agreed upon between the parties.

NOW THEREFORE, in consideration for the mutual promises herein made Distributor and Dealer mutually agree as follows:

1. FRANCHISE GRANT AND TERRITORY

(a) Distributor hereby grants to Dealer for the term of this Agreement an exclusive Franchise to conduct a "Mister Softee" mobile truck business for the sale of soft-serve ice cream, hard ice cream, frozen desserts, novelties, stick items and other products specifically approved and authorized by Mister Softee, Inc., by the operation of the "Mister Softee" ice cream truck bearing serial number

_____ in the following territory: (Must be filled in specifically).

(b) If the Dealer is purchasing more than one "Mister Softee" truck for operation in the above described territory it is agreed there will be a specific Franchise Agreement for each truck and Dealer agrees to purchase the additional truck(s) in accordance with the following schedule: (Must be filled in specifically or marked "not applicable")

(c) It is agreed by the Dealer, if he is purchasing more than one "Mister Softee" truck for operation in the above described territory, that he will strictly adhere to the schedule for the purchase of trucks as above set forth. If the Dealer does not purchase the additional truck(s) as set forth in the schedule, when that event occurs the Distributor may then, or any time thereafter, by written notice to the Dealer through the regular mail, reduce the franchised area and such reduction of area shall be final and conclusive upon the Dealer.

(d) If only one "Mister Softee" truck is purchased and there is no schedule as to future sales, it is understood and agreed that the territory will be re-evaluated two years from the date of this Agreement or at any time thereafter at Distributor's discretion and the number of trucks that the territory will support shall be established upon a population of 10,000 persons per truck for the territory. The population of the territory shall be determined by the last census of the United States and by adding to said figure 1/10th of the increase between the last two census for each year subsequent to the last census to determine the population of the territory for any year in question. In the event that Dealer does not purchase and operate additional trucks for each additional 10,000 population so determined, Distributor may, at any time thereafter by written notice to the Dealer through the regular mail, reduce the franchise area and such reduction shall be final and conclusive upon the Dealer.

(e) Distributor also grants to the Dealer for the term of Agreement, the right to use the trademarked and copyrighted name "Mister Softee", together with all identifying insignia including identifying signs, pattern of display, point of sale posters, menu decals, menu boards, logos, music box and colors, color patterns and color schemas, as well as decals and other markings depicting the ice cream products, for the sole purpose of conducting a "Mister Softee" mobile truck business only as it pertains to the above-mentioned truck(s) and as directed by Mister Softee, Inc., and Distributor, with Dealer's express understanding to do nothing to injure, damage or bring discredit on any such name. Upon the termination of this greement, for any reason whatsoever, Dealer shall cease and desist from any further use of all such "Mister Softee" trademarks, trade names, and identifying insignia as described herein, and shall remove and return to the Distributor or Mister Softee, Inc., all such "Mister Softee" trademarks, trade names, and identifying insignia, including but not limited to identifying signs, menu decals, menu boards, logos, music, decals and colors, and shall alter the color, color pattern, and color scheme of the vehicle so as to be different in design and color than that of a "Mister Softee" ice cream truck

Dealer agrees to purchase said "Mister Softee" mobile ice cream truck(s) as set forth above at prices and terms agreed upon, and to maintain and operate said truck(s) in accordance with the terms of this Agreement.

The truck in question may be new or used according to what is otherwise agreed upon between the parties in this Agreement or any modification thereof.

As to all trucks purchased from Mister Softee, Inc. or Distributor, the Dealer shall review the physical operation of the truck, mechanical and structural operation of the truck, mechanical and structural operation of all the equipment in the truck within thirty (30) days of acquiring the truck. If the Dealer is not capable of these inspections, he should arrange and contract for an adequate and competent person, company or entity to do same within the thirty (30) day period. In the event there are any defects, faults or inoperable mechanical or structural functions of the equipment and/or truck he shall then report these conditions in writing to Mister Softee, Inc. of Runnemede, New Jersey, and Distributor.

If Dealer fails to advise Mister Softee, Inc. in writing, of any defects or objections, it will be presumed that the inspection of said truck and equipment has been made and said truck and equipment have no defects and that Dealer has no objections to same. Since this inspection and reporting is an affirmative duty upon the said Dealer, it is of the utmost important that he fulfill said duty and be quite aware of this obligation. Therefore, it is herewith required that he officially affix his initials in this box (_____).

Dealer further agrees to make any and all repairs to such truck as is necessary to maintain same in good, safe condition. Dealer herewith indemnifies by paying to Mister Softee, Inc. any sum Mister Softee, Inc. or any insurance carrier or other person is required to pay on behalf of Mister Softee, Inc. as damages, as a result of any claim made against Mister Softee, Inc. for personal injuries or property damage as a result of any accident or other mishap involving said truck(s). Dealer shall carry necessary insurance with a qualified and reputable insurance carrier to fund such indemnification. However, if such insurance is not obtained, maintained, or otherwise not in force prior to any such damage occurring so that there is no indemnification insurance in effect at the time of the loss, it shall not relieve dealer of any of his obligations hereunder.

### 3. DEALER ASSISTANCE

Mister Softee, Inc. and the Distributor, are available to provide advice and assistance to the Dealer with regard to the operation of the Mister Softee mobile ice cream truck and its component parts and the operation of the Dealer's Mister Softee franchise business.

### 4. REQUIREMENTS OF DEALER

(a) In view of the fact that the consumer brand name "Mister Softee" and the "Mister Softee" ice cream truck franchises have been made valuable through the efforts of hundreds of Mister Softee Dealers in conforming to uniform plans, procedures and policies in conducting the Mister Softee mobile ice cream and frozen dessert business for the sale of soft-serve ice cream, hard ice cream, frozen desserts, novelties, stick items and other products specifically approved and authorized by Mister Softee, Inc., Dealer agrees to maintain and operate his Mister Softee truck(s) in strict conformance with the plans, procedures and policies therefor from time to time prescribed by Mister Softee, Inc. and Distributor.

(b) Dealer shall devote *full time* to conducting a Mister Softee mobile ice cream and frozen dessert business in the franchised territory

described above, and shall conduct is for a minimum of_____working

days from_____ to _____ of each year. Should dealer art any time become incapacitated to conduct his said business in person(s), or he shall operate more than one truck and need additional personnel, he shall hire an adequate and competent employee(s) or replacement(s) to carry it on in his stead.

This Agreement between Distributor and Dealer and approved by Mister Softee, Inc. is a personal contract and it is presumed that Dealer will be the operator of the truck's) and will have clean, neat and competent employees to operate any additional trucks. It is understood and agreed that Mister Softee mobile ice cream trucks dispense products for human consumption which must be kept refrigerated to be fresh, and are dispensed to the general public. It is further understood that such trucks are operated generally in residential neighborhood areas and should be operated with the greatest of care for the safety of the general public. For this reason, as well as others, Mister Softee, Inc. or the Distributor, reserves the right to require the Dealer to terminate any truck operator who, in the opinion of either Mister Softee, Inc. or its Distributor, does not maintain a neat, clean and well groomed appearance or in any way, in their opinion, may operate and cause hazard to the general public, disparate or be detrimental to the good name and reputation of Mister Softee, Inc. or violate any of the provisions of this Agreement.

(c) Dealer shall maintain his Mister Softee mobile ice cream truck(s) and all ice cream mixes and other food products to be dispensed therefrom in a clean and sanitary condition at all times, in conformance with all Federal, State and local health laws or regulations and the standards of Mister Softee, Inc. In pursuance hereof, Dealer shall permit Distributor's agent to inspect his Mister Softee mobile ice cream truck(s) and his stores of ice cream products and other food products at any place and at any time.

(d) Dealer agrees that he will not, without written approval from Mister Softee, Inc. and Distributor sell any other products from his Mister Softee truck(s) except ice cream, frozen desserts or other products approved and authorized by Mister Softee, Inc. and purchased from suppliers approved and authorized by Mister Softee, Inc. in accordance with its specifications.

(e) Dealer agrees to purchase all supplies which are to be distributed to the consuming public (with or without processing) from: (a) Mister Softee, Inc., (b) Distributor (c) a supplier approved by Mister Softee, Inc., or Distributor.

(f) Dealer agrees that he and any person he may employ in the conduct of his Mister Softee ice cream business shall at all times work in clean sanitary clothing and maintain proper hair grooming and overall personal cleanliness and shall operate vehicles in a manner consistent with circumstances of residential areas, in addition thereto shall be friendly, hospitable and understanding of the conduct of general public.

(g) Throughout the term of this Franchise Agreement, it is agreed that the Dealer shall park and store the "Mister Softee" ice cream truck(s) referred to in paragraph 1 above, at all times when said vehicle(s) is/are not in operation, at a depot or storage yard maintained by the Distributor or Mister Softee, Inc., or a third party depot operator designated as an approved depot by Distributor or Mister Softee, Inc., or in a facility authorized by Mister Softee, Inc. or Distributor. Dealer shall make said vehicle available to Distributor, Mister Softee, Inc. or their designated representatives for inspections to insure compliance with the provisions of this paragraph, as well as the other provisions of this Franchise Agreement.

### 5. PAYMENTS BY DEALER

(a) Effective January 1, 1999 and thereafter, as additional consideration for the franchise grant conferred hereunder, all new Dealers (to be defined as those persons or entities not currently having a franchise with Mister Softee, Inc.) will pay to Mister Softee, Inc. an initial franchise fee of Five Thousand Dollars ($5,000.00) Existing Dealers (defined as persons or entities currently having a valid franchise and who are not in default of any of the terms of their Franchise Agreement) who are obtaining additional territory by purchase or assignment will pay to Mister Softee, Inc. a franchise fee of Two Thousand Five Hundred Dollars ($2,500.00) per territory. These existing Dealers who purchase a truck from a third party must have prior approval from Mister Softee, Inc. and will pay to Mister Softee, Inc. a franchise fee of Two Thousand Five Hundred Dollars ($2,500.00).

(b) In consideration of the franchise grant conferred hereunder, Dealer hereby agrees to pay to all dairies from whom he may purchase soft serve ice cream or frozen dessert mix a service charge of One Dollar and Seventy Cents ($1.70) on each gallon of mix purchased, and Fifteen Cents ($.15) on each dozen of hard ice cream and frozen dessert novelties purchased. Said service charges shall be paid to the dairy or depot or service terminal where said products are being purchased at the time and in addition to the costs of said products. Said dairy, depot or service terminal in effect is collecting said service charge for Mister Softee, Inc.

(c) This service charge will be increased or decreased, in increments of fifteen cents ($0.15) on each gallon of mix purchased based upon the Consumer Price Index, U.S. city averaged as published by the U.S. Department of Labor, Bureau of Labor Statistics. The national Mister Softee service charge was set at One Dollar and Seventy Cents ($1.70) per gallon on January 2, 1998, when the national Consumer Price Index was 161.3 (1984 = 100). In the event there should be an increase or decrease of Ten Percent (10%) to the Index, the service charge would be increased or decreased by Fifteen Cents ($0.15) per gallon and thereafter any subsequent increase or decrease of Ten Percent (10%) to the Index would likewise increase or decrease the service charge in increments of Fifteen Cents ($0.15) per gallon. The service charge on hard ice cream and frozen dessert novelties shall also be increased or decreased in a similar fashion pursuant to said Consumer Price Index in increments of Five Cents ($0.05) per dozen

(d) Dealer further agrees, if with the consent of Distributor and Mister Softee, Inc. he is permitted to sell food or other products from his truck(s), that he will pay Mister Softee, Inc. Four Percent (4%) of the gross amount of his sales of such products.

(e) Dealer agrees to have his Mister Softee truck(s) repainted every three years. Mister Softee, Inc. agrees to allow 10% of the total service charge paid by the Dealer toward the cost of repainting said truck(s). In the event this sum is not sufficient to pay the prevailing cost of repainting said truck(s), the balance will be paid by the Dealer. Dealers within a 150 mile radius of Mister Softee, Inc., Runnemede, New Jersey, shall have their truck(s) painted at Mister Softee, Inc. in order to utilize the paint fund. Dealers beyond the 150 mile radius have the option to paint the truck(s) at a competent paint shop.

### 6. QUOTA BUSINESS EFFORT

(a) Dealer agrees to purchase from suppliers approved by Mister Softee, Inc. a minimum of _____ gallons or equivalent of soft ice cream mix, hard ice cream, frozen desserts, novelties, stick items, per year per truck during the term of this Agreement or any extension thereof and it is agreed that such amount is a reasonable quota. In the event Dealer fails to purchase the above stated gallonage quota in any particular year, Dealer

[text illegible] ... the amount of services charge paid to the Dealer in that year ...

15. [text illegible] that he will at all times during the continuance of this Agreement or any extension, loyally, aggressively and faithfully promote a Mister Softee mobile ice cream and frozen dessert truck business throughout the entire territory, that he will diligently endeavor to develop and increase its sales in the entire territory, that he will service the entire territory in a systematic and businesslike manner at all times; and that he will engage in sufficient equipment to enable him to meet satisfactorily the demands of said business in his territory as the same may, from time to time, increase

## 7. INSURANCE COVERAGE

Throughout the term of this Agreement, Dealer shall maintain at Dealer's own expense, bodily liability insurance in the minimum amount of 20,000.00 as to each person, and $300,000.00 as to each occurrence, and property damage insurance in the amount of $50,000.00 as to each occurrence, and product's liability insurance in the amount of $100,000.00 as to each person, and $300,000.00 as to each occurrence

Dealer shall additionally maintain insurance in the minimum amount of $100,000.00 as to each person and $300,000.00 as to each occurrence in the form of indemnification as to Mister Softee, Inc. and Distributor as a result of any claims or damages or any defect or mishap in any way resulting from truck(s) operated by Dealer, his employee(s), or any other person while said truck(s) are owned or under the control of said Dealer.

These requirements are minimum requirements. Mister Softee, Inc. and Distributor advise Dealer to consult with Dealer's insurance professionals to insure that adequate coverage is provided. Increased coverage limits may be obtained at Dealer's option. All policies shall be issued in the name of Dealer, Distributor and Mister Softee, Inc. as their interests may appear, and shall be lodged at all times with Mister Softee, Inc. In addition to the above, Dealer agrees at all times to hold Distributor and Mister Softee, Inc. free and harmless from any and all loss or damages on account of claims or suits which may arise out of the conduct of Dealer's "Mister Softee" mobile ice cream or frozen dessert business. Failure to provide proof of such insurance to Mister Softee, Inc. and Distributor on not less than an annual basis shall be deemed a breach of this Agreement in accordance with Paragraph 9 of this Agreement.

## 8 ASSIGNMENT

The franchise granted by this Agreement is not assignable by Dealer except upon the following terms:

(a) Dealer must not be in default of any obligation to Mister Softee, Inc., Distributor, or franchisee designated depot operator as a result of sums due pursuant to the terms of this franchise.

(b) Dealer shall first obtain the written consent of Distributor and Mister Softee, Inc.

(c) The purchaser shall be a financially responsible person acceptable to Distributor and Mister Softee, Inc.

(d) The purchaser shall enter into a new Dealer Franchise Agreement with Distributor in the form then current, before financing papers and sale contract have been completed and executed and title has been transferred.

(e) Dealer shall pay to Mister Softee, Inc. a transfer fee in the sum of Two Hundred Fifty Dollars ($250.00) for the preparation of a new Dealer Franchise Agreement in the Assignee/Transferee's name and for any and all such expenses incurred by Distributor and Mister Softee, Inc. in effecting said transfer.

Assignee/Transferee shall pay, upon the execution of his Agreement a sum of Two Hundred Fifty Dollars ($250.00) which shall be held in escrow and bear interest at Five Percent (5%) upon the termination of his Dealer Franchise Agreement.

The purpose of such escrow is to cover the transfer fee above required. It is the obligation of the Dealer to pay said transfer fee upon assignment of his franchise. In the event the Dealer does not pay the transfer fee, the escrow fund of Two Hundred Fifty Dollars ($250.00) plus any accrued interest, will be forfeited to Mister Softee, Inc. to cover the above charge.

(f) Dealer shall comply with all applicable State and Federal laws and regulations.

(g) Upon the completion of the sale, with the approval of Mister Softee, Inc., this Dealer Franchise Agreement will be terminated and cancelled and Dealer shall release Mister Softee, Inc. and Distributor from any and all claims of any manner, kind or thing of any description whatsoever and Mister Softee, Inc. and Distributor agree to release the Dealer from any and all claims of any manner, kind or thing of any description whatsoever when Dealer has fully complied with all provisions of this Paragraph 8 and its subsections

## 9. BREACH OF AGREEMENT

Should Dealer default in the performance of any of his obligations under any of the provisions of this Agreement, then, at the option of the Distributor or Mister Softee, Inc., this Agreement may be terminated if, within seven (7) days after notice of such default has been given to Dealer by Distributor or Mister Softee, Inc., Dealer shall not have remedied same. Notices required under this Agreement shall be in writing and shall be deemed to be properly served upon mailing same. Certified Mail, Return Receipt Requested addressed to the Dealer at the address set forth in this Franchise Agreement unless the Dealer has otherwise, in writing, advised Mister Softee, Inc., and Distributor of a new address. "Service" shall be deemed to have been effected by sending such notice, Certified Mail, Return Receipt Requested, and regular mail, postage prepaid, to the Dealer at such address, and the time for compliance shall commence upon the mailing of such notice which shall be the date on which such notice is deposited in a Post Office of the United States Postal Service. Failure of Distributor or Mister Softee, Inc. to terminate this Agreement upon the happening of any such default shall not be deemed a waiver of the right to terminate the same upon said default occurring thereafter or the happening of any subsequent default or defaults. The rights and remedies granted in this Franchise Agreement shall be in addition to any other rights and remedies which the Distributor or Mister Softee, Inc. may lawfully have to make a claim or claims against the Dealer for breach of contract

In the event of the termination of the Dealer, based upon the default of the Dealer, the Distributor and Mister Softee, Inc., shall be entitled to any and all remedies available to them at law and in equity including but not limited to, the right to seek injunctive relief, monetary damages, and, additionally, the Dealer shall be responsible for reasonable attorney's fees and costs incurred by Dealer or Mister Softee, Inc., in enforcing the terms of this Agreement

## 10 EFFECT OF TERMINATION

(a) In the event this Agreement is terminated for any reason, Dealer shall forthwith remove from his truck(s) all Mister Softee trademarks, trade names and identifying insignia including, but not limited to, identifying signs, pattern of display, menu decals, logos, music box, decals and colors, color pattern or scheme, as well as decals or other markings depicting ice cream products. The truck itself shall be painted a different design and different colors other than the colors and design of "Mister Softee" ice cream trucks. All materials such as Standard Operating Procedure manuals, hot iron transfer and other "Mister Softee" identifying materials shall be returned to Mister Softee, Inc. or the Distributor. Mister Softee, Inc. or the Distributor shall pay to the Dealer upon delivery of such items an amount equal to Dealer's original cost thereof, less ten per cent (10%) for stocking the items in inventory.

(b) Upon the termination of this Agreement, or any extension, for any reason, Dealer covenants that he will not for a period of three (3) years after such termination, directly or indirectly engage or participate in the mobile ice cream business in the territory covered by this Agreement.

## 11 TERM

This Agreement shall continue in force for ten (10) years from its date and may be extended by Dealer for one additional period of five (5) years upon thirty (30) days written notice to Distributor and Mister Softee, Inc., prior to the end of said Term, provided Dealer is not in default of any other provision owed to Distributor or Mister Softee, Inc., pursuant to the terms of this Agreement. Upon expiration of the five (5) year renewal period, the Dealer and Mister Softee, Inc. or Distributor, may enter into a new Franchise Agreement in accordance with the Franchise terms and conditions as may exist at that time

## 12 INSOLVENCY OF DEALER

Dealer shall, during the term of this Agreement, pay his bills and other obligations as they become due and shall maintain a good relationship with his creditors and a good credit reputation.

Should Dealer fail financially, or make a general assignment for the benefit of creditors, or file a voluntary petition in bankruptcy, or should an involuntary petition in bankruptcy be filed against Dealer, or should the assets of Dealer, for any reason, be placed in the hands of a receiver, this Agreement shall automatically terminate. Upon termination, Distributor or Mister Softee, Inc. shall have all of the rights heretofore granted to them under Paragraph 10, B, of this Agreement and Dealer shall remain bound by the provisions of Paragraph 10,B, of this Agreement.

## MISCELLANEOUS

(a) In the event Dealer's Mister Softee truck(s), during the term of this Agreement, should be damaged by fire, explosion, wind, accident or any other cause whatsoever so that the truck(s) is inoperable, Dealer agrees that this Agreement shall be terminated and cancelled unless within thirty (30) days of the date of the damage or destruction of the truck, so it shall have been repaired so as to be operable or replaced with another operable Mister Softee ice cream truck(s)

within 30 days of filing

(c) Dealer agrees that Distributor or Mister Softee, Inc. may examine his books and records at any reasonable time during business hours.

(d) Dealer agrees that Dealer shall pay all of its employees such wages as may be required by law and shall be covered by sufficient workmen's compensation insurance at all times which insurance shall be provided by the Dealer and not by the Distributor or Mister Softee, Inc.

(e) This Agreement shall not be construed as making Dealer an agent, tenant, representative or employee of Distributor or Mister Softee, Inc., and Dealer has no authority to assume or create any obligations or responsibility express or implied, for or on behalf of Distributor or Mister Softee, Inc.

(f) This Agreement shall be interpreted and construed in accordance with the laws of the State of New Jersey, and if any part of it should for any reason be held to be invalid by any decision of any court, the remainder of it shall be enforceable nevertheless

(g) Any notice which is required to be given under the provisions of this Agreement shall be deemed to have been given when it is placed in the United States mail addressed to the person entitled to receive the same at the address shown above or at such other address as may from time to time be requested in writing, with the postage therein prepaid.

(h) Any and all obligations under this Agreement which from their very nature are meant to survive the termination of this Agreement shall so survive.

(i) This Agreement contains the entire agreement between Dealer and Distributor and all prior agreements, negotiations and representations are merged herein.

(j) This Agreement shall be binding upon the heirs, executors, administrators and successors of the parties.

(k) In the event that the Dealer is a corporation, Dealer agrees that this Agreement shall bind all officers, shareholders, directors, employees, and their heirs and assigns as long as this Agreement is in effect and that this Agreement shall be incorporated in the Minutes of a special shareholders' and directors' meeting and shall be approved by the directors and shareholders at their special meeting with an authorization for the proper corporate officers to execute the Agreement, prior to its execution by the Dealer, and a copy of the said Minutes attested to by the proper corporate officers, shall be presented to the Distributor before the execution of this Agreement and that there shall appear on the Share Certificate issued to each shareholder that the Share Certificate is subject to this written Agreement with its date between the Distributor and Dealer. In the event that the Dealer is an individual or a group of individuals who desire to incorporate or become incorporated, then and in that event the Dealer agrees that this Agreement shall bind all officers, shareholders, directors, employees and their heirs and assigns so long as this Agreement is in effect and that this Agreement shall be incorporated in the Minutes of the shareholders' and directors' first meeting after the incorporation and shall be approved by the directors and shareholders at their first meeting after the incorporation, with an authorization for the proper corporate officers to execute this Agreement on behalf of the corporation and a copy of the said Minutes attested to by the proper corporate officers shall be presented to the Distributor immediately after the first meeting and that there shall appear on the Share Certificate issued to each shareholder that the Share Certificate is subject to this written Agreement with its date between the Distributor and Dealer.

(l) Dealer acknowledges that Dealer has been fully informed as to the operations and financial condition of Mister Softee, Inc. and the Distributor, and has received the required Disclosure Information in the appropriate time frame as required by State and Federal law.

(m) Should any dispute or controversy arise between Distributor and Dealer with regard to the extent of Dealer's territory or the performance by Dealer of any of his requirements hereunder, then the matter shall be referred in writing to Mister Softee, Inc. for decision, and such decision shall be final and conclusive upon both Distributor and Dealer.

## 14. DEALER ACKNOWLEDGMENT

The Dealer acknowledges that he was presented a copy of this Agreement five (5) days prior to his signing of same. He further acknowledges that he has read this entire Agreement and that he fully understands the contents of same. Anything he did not understand he has made known to the Distributor or another representative of Mister Softee, Inc. and has had same fully explained to his satisfaction, or has taken same to his attorney or advisor and reviewed said Agreement with such person. By affixing his signature below, he fully acknowledges his understanding of the contents of this entire Agreement.

## 15. EFFECTIVE DATE

This Agreement shall not go into effect unless and until Mister Softee, Inc. shall have signified its approval hereof by executing the Agreement in the space provided below.

IN WITNESS WHEREOF, Dealer and Distributor have hereunto set their hands and seals the day, month and year first above written.

WITNESS:

DISTRIBUTOR _____ (Corp.)
(Seal)

By: _____
(Name)      (Title)

Attest: _____
(Name)      (Title)
(Corp.)

DEALER: (If a Company) _____ (Seal)

By: _____
(Name)      (Title)

Attest: _____
(Name)      (Title)

DEALER: (If an individual) _____

Dealer's Wife: _____

Approved by MISTER SOFTEE, INC

By: _____

## PERSONAL GUARANTEE

In consideration of the granting of this franchise to _____, a corporation, _____, an individual, as an officer, director and shareholder of said corporation, hereby individually and personally guarantees each and every obligation of said corporation now owed or which in the future may be owed to Mister Softee, Inc. or Distributor, pursuant to the terms of this Franchise Agreement

WITNESS:

_____
Individual